# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 4, 2015 Session

## STATE OF TENNESSEE v. RHAKIM MARTIN

**Appeal by Permission from the Court of Criminal Appeals**
**Appeal from the Criminal Court for Shelby County**
**No. 1105719      Chris Craft, Judge**

_____

**No. W2013-02013-SC-R11-CD – Filed October 14, 2016**

_____

A jury convicted the defendant of carjacking and employment of a firearm during the commission of a dangerous felony. The trial court imposed an effective sixteen-year sentence. The Court of Criminal Appeals affirmed. In this Court, the defendant presents the following issues: (1) whether the trial court erred in denying his motion to suppress the victim's identification of him because the victim previously viewed his photograph on a county-operated "mug shot" website; (2) whether the trial court committed plain error in failing to instruct the jury on possession of a firearm during the commission of a dangerous felony as a lesser-included offense of employment of a firearm during the commission of a dangerous felony; (3) whether the failure to name the predicate felony of the firearm offense voids that count of the indictment; (4) whether the defendant's conviction for the firearm offense violates the prohibitions against double jeopardy and the terms of Tennessee Code Annotated section 39-17-1324(c); and (5) whether the evidence was insufficient to support the convictions. We hold that the victim's prior viewing of the defendant's booking photograph on the county-operated website did not constitute state action and that the trial court therefore properly denied the defendant's motion to suppress the victim's identification of him. We further hold that the defendant failed to establish that the trial court's failure to instruct the jury on the lesser-included offense of possession of a firearm during the commission of a dangerous felony affected a substantial right, so the defendant is not entitled to plain error relief. Based on our holding in State v. Duncan, No. W2013-02554-CCA-R3-CD, 2016 WL ____, at * _ (Tenn. ___ ___, 2016), released on the same date as this opinion, we conclude that the failure to name the predicate felony of the firearm offense does not void that count of the indictment. We hold that the defendant's convictions for carjacking and employing a firearm during the commission of a dangerous felony did not violate either double jeopardy or Tennessee Code Annotated section 39-17-1324(c). Finally, we conclude that

the evidence was sufficient to support the convictions. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and SHARON G. LEE, JJ., joined.

Lance R. Chism, Memphis, Tennessee (on appeal), and Paul K. Guibao (at trial), for the appellant, Rhakim Martin.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; John H. Bledsoe, Senior Counsel, Criminal Justice Division; Amy P. Weirich, District Attorney General; and Alexia Crump, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION
### FACTUAL AND PROCEDURAL BACKGROUND

Around 8:30 p.m. on the evening of May 22, 2011, Christie Currie (hereinafter "victim") pulled her 2011 black Toyota Camry up to the mailbox at her boyfriend's house.[1] At the time, it was "getting dark" but not completely dark outside, and there were two street lights nearby, one across the street and another between the houses. As the victim reached into the mailbox, a man on a bicycle appeared from behind, put a gun to her head, and told her to give him everything she had. The man then moved in front of the victim; standing approximately six feet in front of her; he pointed his gun at her face and demanded that she get out of her car.

Terrified, the victim left her purse and other belongings in her car and fled to a neighbor's house. As the victim waited for the neighbor to answer the door, she looked back at her car. The door to the car was open and the lights inside the car were on, and the victim saw her assailant sitting in the driver's seat of her car. Another man was loading the bicycle into the back seat of her car. Once the neighbor let the victim into the house, the neighbor called the police to report the carjacking.

---

[1] We summarize the proof pertinent to the issues discussed in this opinion. A full recitation of the evidence presented in the suppression hearing and at trial is contained in the opinion of the Court of Criminal Appeals in this case. See State v. Martin, No. W2013-02013-CCA-R3CD, 2015 WL 555470, at *1 (Tenn. Crim. App. Feb. 10, 2015), perm. app. granted (May 15, 2015).

In her recounting to the police of the carjacking, the victim indicated that she had clearly seen the face of the man who pointed the gun at her. She described him as having dark skin, long hair, and no facial hair, and she emphasized that he had distinctive "beady eyes." She said he was wearing a black shirt and dark pants, and estimated his age as between seventeen and twenty years old.

Soon after the incident, the victim began checking a website called "Shelby County Who's In Jail?" to see if it might include a photograph of her carjacker. The website, operated by the Shelby County Sheriff, contained photographs of persons recently processed into the Shelby County jail. The website showed each person's booking photograph, name and birthdate, as well as the booking number, date and time, but it did not include the reason why the person was booked into the jail or any charges pending against him.[2]

About three weeks later, a Memphis police officer out on patrol saw a black Toyota Camry, later identified as the victim's stolen car, speed past him on the wrong side of the road. Not long afterward, the officer located the car, wrecked and abandoned, outside of an apartment complex. Using the Vehicle Identification Number, the officer learned that it was a carjacked vehicle. He found two traffic tickets inside it; both were issued to appellant Rhakim Martin (hereinafter "defendant") after the date of the carjacking. The officer ran the driver's license listed on the tickets and viewed the defendant's driver's license photograph.

A short while later, the same police officer saw a vehicle leaving the apartment complex where the victim's wrecked Camry was found. The vehicle had an expired license plate, so the officer stopped it. The officer recognized the defendant, who was driving the vehicle, as the same person in the driver's license photograph for the traffic tickets that he had found in the victim's stolen car. The defendant admitted to the officer that he had been driving the abandoned black Camry; he claimed that he got the vehicle from his cousin. The defendant was taken into custody.

After the defendant was jailed, a police officer with the City of Bartlett Police Department contacted the victim. The officer told the victim that her car had been recovered and asked her to come to the station to view a photographic array of possible

---

[2] The record does not indicate that the website viewed by the victim in this case had any affiliation with commercial "mug shot" websites. Some of the commercial sites charge fees to have the mug shots removed, which has led to various government efforts to prevent exploitation. See National Conference of State Legislatures, Mug Shots and Booking Photo Websites, NCSL.ORG, , http://www.ncsl.org/research/telecommunications-and-information-technology/mug-shots-and-booking-photo-websites.aspx (last visited September 9, 2016).

suspects. She was not told whether anyone had been arrested in connection with the recovery of her car.

Meanwhile, the victim had been regularly checking the "Who's In Jail?" website to see if it included a photograph of her assailant. Before she went to the police station to view the photographic array, she looked again at the website to see if it included a photograph of her assailant. She initially looked at the photographs from the top of the list but then narrowed her search by date of birth to correlate with the age range she perceived her assailant to be. After clicking on five to seven photographs, the victim came upon the defendant's photograph and recognized him as her carjacker. As with the other photographs on the website, the defendant's photograph listed his name and birthdate but not the basis for his arrest or any charges against him.

At the Bartlett police station, the victim met with Detective Phillip Gooch. Before the victim viewed the photographic array, she told Detective Gooch that she had looked online at the "Who's In Jail?" website and had recognized a photograph of the man who carjacked her vehicle.[3] Detective Gooch later testified that he did not suggest to the victim that she look at the "Who's In Jail?" website and was not with her when she viewed it. He confirmed that the photograph in the array shown to the victim was the same booking photograph that was on the "Who's In Jail?" website.

Before showing the victim the photographic array, Detective Gooch gave her a set of instructions that included a caution that the perpetrator may or may not be in the array. He then showed the victim the array without giving her any hints or suggestions about whom she should pick.

Upon viewing the photographic array, the victim "immediately" identified the defendant as the perpetrator. She circled the defendant's photograph and wrote, "This is the guy that carjack[ed] me on 5/22/11 at gunpoint." The victim later said of her identification of the defendant's photograph: "I was sure of it."

In August 2011, the Shelby County Grand Jury returned a two-count indictment against the defendant. The first count of the indictment alleged that, on May 22, 2011,

---

[3] Detective Gooch said that the victim told him that she found the defendant's photograph on the "Who's In Jail?" website shortly after she received the call telling her that her vehicle had been recovered. The victim maintained that she had been checking the website regularly and recognized the defendant's photograph within a day *before* she received word that her vehicle had been recovered. Regardless, it is undisputed that the victim recognized the defendant's photograph on the "Who's In Jail?" website before she went to the Bartlett police station to view the photographic array.

the defendant committed carjacking,[4] a Class B felony.  The second count of the indictment alleged that, on May 22, 2011, the defendant committed the offense of employment of a firearm during the commission of a dangerous felony,[5] a Class C felony.  The second count of the indictment referenced Tennessee Code Annotated section 39-17-1324(i)(1), which defines the term "dangerous felony," but it did not name the dangerous felony that was the basis for the firearm charge.

Prior to trial, the defendant filed a motion to suppress the victim's identification of the defendant.  After a hearing, the trial judge denied the defendant's motion.

At trial, the defendant elected not to testify or to put on any proof.  He made an oral request for the trial court to instruct the jury on the offense of possession of a firearm during the commission of a dangerous felony as a lesser-included offense of employment of a firearm during the commission of a dangerous felony; the trial court denied this request.  At the close of trial, the jury convicted the defendant as charged of both carjacking and employment of a firearm during the commission of a dangerous felony.  At the sentencing hearing, the trial court sentenced the defendant to an effective term of sixteen years in the Tennessee Department of Correction.

The Court of Criminal Appeals affirmed the trial court's judgment.  See State v. Martin, No. W2013-02013-CCA-R3-CD, 2015 WL 555470, at *14 (Tenn. Crim. App. Feb. 10, 2015), perm. app. granted (May 15, 2015).  The defendant then sought permission to appeal to this Court, which was granted.

## ANALYSIS
## Who's In Jail?

The defendant contends that the trial court erred in denying his motion to suppress the victim's identification of him because the identification procedure was unduly suggestive.  He argues that the Shelby County Sheriff established the "Shelby County Who's In Jail?" website and placed the defendant's booking photograph on the website, and this act allowed the victim to see the defendant's booking photograph before she was shown the photographic array. This was state action, the defendant maintains, and it rendered the identification process overly suggestive.

When an appellate court reviews a trial court's ruling on a motion to suppress evidence, the party who prevailed at the suppression hearing is afforded the "strongest

---

[4] Tenn. Code Ann. § 39-13-404 (2014).

[5] Tenn. Code Ann. § 39-17-1324(b) (2014).

legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The trial court's findings of fact in a suppression hearing are upheld unless the evidence preponderates against them. Id. The application of the law to the facts found by the trial court is a question of law and is reviewed on appeal de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, a witness's pretrial identification of the defendant by photograph will be suppressed "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968); see also Stovall v. Denno, 388 U.S. 293, 302 (1967), *abrogated on other grounds by* Griffith v. Kentucky, 479 U.S. 314, 321 (1987). The United States Supreme Court has emphasized that "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary," and only if the eyewitness's identification "is tainted by police arrangement." Perry v. New Hampshire, 132 S. Ct. 716, 724 (2012) (no law enforcement arrangement where witness saw defendant talking to police officer in parking lot and spontaneously identified him) (citing Manson v. Brathwaite, 432 U.S. 98, 107–09 (1977), and Neil v. Biggers, 409 U.S. 188, 198 (1972)). Even when the police use a suggestive and unnecessary procedure, "suppression of the resulting identification is not the inevitable consequence." Id. (citations omitted). The trial court must assess, on a case-by-case basis, "whether improper police conduct created a 'substantial likelihood of misidentification.'" Id. (quoting Biggers, 409 U.S. at 201).

Trial judges are not required "to prescreen eyewitness evidence for reliability any time an identification is made under suggestive circumstances." Perry, 132 S. Ct. at 725. "[T]he due process check for reliability . . . comes into play only after the defendant establishes improper police conduct [because the] very purpose of the check . . . was to avoid depriving the jury of identification evidence that is reliable, *notwithstanding* improper police conduct." Id. at 726 (emphasis in original) (citing Brathwaite, 432 U.S. at 112–13). The Court in Perry explained that the rationale behind the rule is deterrence of police misconduct: "A primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place." Id. (citing Brathwaite, 432 U.S. at 112). Therefore, unless the defendant establishes "the taint of improper state conduct," the trial court need not screen eyewitness identification evidence before allowing the jury to assess it. Id. at 728. The same is true under the Due Process Clause of the Tennessee Constitution. See State v. Reid, 91 S.W.3d 247, 272 (Tenn. 2002) (no state action where witness identified defendant from television coverage) ("In the

- 6 -

absence of state action in the identification process, constitutional due process rights are not implicated.").

In its order denying the motion to suppress the victim's identification of the defendant, the trial court summarized the evidence at the suppression hearing and analyzed it in light of the pertinent law:

> [The victim] was carjacked while in her car reaching into her mailbox to get her mail. She saw the carjacker while he forced her to turn over her purse, cell phone and car at gunpoint on May 22, 2011. She began routinely checking the website "Who's in Jail?" every few days at http://injail.shelby-sheriff.org/kiosk.php, clicked on "Recent Bookings," and then clicked on the names of males with the approximate date of birth of her carjacker to see if she recognized any of them. As the officer testified and as anyone clicking on that website can observe, a list of several hundred persons appears in approximate order of booking into the jail, with their names, date of birth, gender and race listed. Upon choosing a name and then clicking on "details," that person's booking photo appears.
>
> A month went by, with the victim checking the website at intervals with no results, when her car was found wrecked. The officer responding to the accident looked in the abandoned car and found the defendant's name on two citations inside the car. Apparently, the tag on the Toyota Camry had been stolen from another car with a similar make and appearance. The officer found the defendant at the scene and placed him under arrest. The case officer then called the victim, telling her only that her car had been recovered and that he wished her to view a photo spread. Before she came down on June 14th, she checked the web site again and after about six photographs she saw the photo of her carjacker, who was the defendant. She appeared on the 14th and told the officer she had seen the carjacker's booking photo on the website, then viewed the photo spread and immediately identified the defendant's photo as her carjacker. The defendant argues that the photo lineup was unfair to the defendant because the victim had seen his photograph prior to the lineup's having been given, and therefore the lineup identification should be suppressed.
>
> The first identification of the defendant by the victim can hardly be described as a "showup," because she had looked at many, many photos for a month prior to seeing the defendant's photo, making no identification. Even when she recognized him in the booking photo after being called by the police to come view a lineup and being told that her car had been

recovered, the defendant's photo was approximately the sixth photo on which she had clicked. Even if it could be considered a showup of sorts, in all of this investigation on her part there was no state action. She was not told by the police that anyone had been arrested in conjunction with her car's recovery and the booking photos on "Who's in Jail?" contain no indication of the type of offense for which the booked person was arrested. The police had no idea she was conducting her own investigation until she appeared for the photo lineup and told them.

The United States and Tennessee Constitutions protect defendants from their governments, but not from the independent investigation of their victims. Our Tennessee Supreme Court in State v. Reid, 91 S.W.[3]d 247, 272 (Tenn. 2002), held that it is well-settled Tennessee law that in the absence of state action in the identification process, constitutional due process rights are not implicated, and that therefore the analysis adopted by the United States Supreme Court in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) is not appropriate. . . .

Because no state action was involved, suppression of the photo lineup is not warranted. The viewing of the booking photo by the victim within 24 hours of the giving of the photo spread may go to the weight the jury may give that identification, but it does not affect its admissibility.

Martin, 2015 WL 555470, at *9–10 (quoting trial court's order denying motion to suppress). The trial court's analysis on this issue is spot on. The victim was motivated to do whatever she could to bring her perpetrator to justice, so she began perusing the Shelby County "Who's In Jail?" website of her own initiative. As observed by the Court of Criminal Appeals below, "[t]he mere fact that the website was operated by the sheriff's department does not transform the [victim's] actions into state action." Id. at *10. Even where law enforcement disseminates a photograph of the defendant to the media, "absent evidence that law enforcement also orchestrated the viewing of that photograph by a witness, there is no state action. . . ." State v. Webster, 104 A.3d 203, 208 (N.H. 2014) (citation omitted) (police release of defendant's booking photograph to media was not "state action" where state did not "arrange for or encourage the victim's serendipitous viewing of [his] picture on television"); see also State v. Miramon, No. 2 CA-CR 2005-0335, 2007 WL 5578361 (Ariz. Ct. App. Sept. 21, 2007), at *4 (newscast showing "mug shot" photograph of defendant was not state action within meaning of Biggers, even though photograph was disseminated to media outlets by police)); accord State v. Kennedy, No. 1 CA-CR 06-0556, 2007 WL 5209493, at *2 (Ariz. Ct. App. Oct. 18, 2007) (police release of photograph was not state action where they did not arrange for or encourage victim's viewing of defendant's photograph on television); O'Connell v. State,

742 N.E.2d 943, 948 (Ind. 2001); <u>Bell v. State</u>, Nos. 031-1-00247-CR, 03-11-00248-CR, 03-11-00249-CR, 03-11-00250-CR, 03-11-00251-CR, 2012 WL 3797597, at *8 (Tex. Crim. App. Aug. 28, 2012).

Likewise, the fact that the photographic array shown to the victim included the same booking photograph that was on the "Who's In Jail?" website does not indicate "improper state conduct." <u>Perry</u>, 132 S. Ct. at 728. We agree with the lower courts that the defendant failed to establish improper state action in the identification procedure, and we therefore affirm the trial court's denial of the defendant's motion to suppress the victim's identification of him.

### Jury Instruction on Lesser-included Offense

The defendant next contends that the trial court erred in refusing his request to instruct the jury on possession of a firearm during the commission of a dangerous felony[6] as a lesser-included offense of the charged offense, employment of a firearm during the commission of a dangerous felony.[7] Defense counsel made an oral request at trial for such a jury instruction, but he failed to make a written request. Consequently, as the defendant acknowledges, he waived this issue.[8]

Despite the waiver, the defendant asks this Court to consider the issue on plain error review. The trial court in this case denied the requested jury instruction based on its

---

[6] Tenn. Code Ann. § 39-17-1324(a) (2014).

[7] Tenn. Code Ann. § 39-17-1324(b).

[8] Tennessee Code Annotated § 40-18-110(b) provides:

"In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge."

Tenn. Code Ann. § 40-18-110(b) (2012). Subsection (c) of the same statute makes it clear that the failure to make a written request results in waiver of the issue: "Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section such instruction is waived." Tenn. Code Ann. § 40-18-110(c). Therefore, trial counsel's oral request for a jury instruction on possession of a firearm during the commission of a dangerous felony as a lesser-included offense of employment of a firearm during the commission of a dangerous felony was insufficient to preserve the issue for appeal. <u>See, e.g.</u>, <u>Moore v. State</u>, _S.W.3d_, No. W2013-00674-SC-R11-PC, 2016 WL 1043121, at *5 (Tenn. Mar. 16, 2016) (recognizing that the statute requires a defendant to request lesser-included offense instructions in writing to avoid waiver of the issue); <u>State v. Rice</u>, 184 S.W.3d 646, 675–76 (Tenn. 2006); <u>State v. Wilson</u>, 211 S.W.3d 714, 720 (Tenn. 2007).

ruling that "possession is not a lesser included because employing a firearm does not include the element of with intent to go armed, however, possession does under the statute." Subsequently, during the pendency of the defendant's appeal to the Court of Criminal Appeals, this Court rendered its opinion in State v. Fayne, holding that possession of a firearm during the commission of a dangerous felony is a lesser included offense of employment of a firearm during the commission of a dangerous felony. See State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014).

The defendant argues that the trial court's failure to give the requested jury instruction was "plain error" but acknowledges that, at the time of trial, the question of whether the possession offense was a lesser-included offense of the employment offense was unsettled. He asks this Court to adopt for Tennessee the "plain error" holding of the majority in Henderson v. United States, 133 S. Ct. 1121, 1124–25 (2013).[9]  In Henderson, the majority of the Court held that, where a substantive legal question was unsettled at the time the trial court acted but becomes settled by the time of direct appellate review, the trial court's error should be considered "plain" within the meaning of the federal rule providing for plain error review; this allows the appellate court to consider the error even though it was not brought to the trial court's attention. Id. at 1124–25 (interpreting Federal Rule of Criminal Procedure 52(b)).  The dissent in Henderson argued that plain error review of forfeited errors should be limited "to those that were 'plain' when the objection should have been made . . . ," in order to be consistent with the language of the federal rule and "not thwart the objective of causing objections to be made when they can do some good." Id. at 1131–32 (Scalia, J. dissenting).  In this case, the defendant asks this Court to adopt the majority view in Henderson, hold that the trial court committed plain error in the jury instructions, and reverse his conviction for employment of a firearm during the commission of a dangerous felony on that basis.

> Rule 36(b) of the Tennessee Rules of Appellate Procedure provides:
> A final judgment . . . shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party . . . even though the error was not raised in the motion for a new trial. . . .

---

[9] The Henderson issue was noted by this Court in Fayne but was not addressed. See Fayne, 451 S.W.3d at 372 n.6.

The Advisory Commission comment explains that the first sentence of Rule 36(b) "states the harmless error doctrine" and the second sentence "incorporate[es] the plain error doctrine." Tenn. R. App. P. 36, Adv. Comm. 2009 comment.

Plain error relief is granted only when there is a clear, conspicuous, or obvious error that affects the substantial rights of the defendant. United States v. Olano, 507 U.S. 725 (1993) (analyzing Federal Rule of Criminal Procedure 52(b)). "To rise to the level of plain error, '[a]n error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding.'" State v. Banks, 271 S.W.3d 90, 127 (Tenn. 2008) (quoting State v. Page, 184 S.W.3d 223, 231 (Tenn. 2006)).

In Tennessee, an appellate court will grant relief for plain error only if (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law has been breached; (c) a substantial right of the accused has been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice." State v. Michael Smith, No. W2013-01190-SC-R11-CD, 2016 WL 3475723, at *6 (Tenn. June 24, 2016); State v. Donald Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (citing State v. Adkisson, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)).[10] "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Donald Smith, 24 S.W.3d at 283. "If any one of these factors is not satisfied, we need not consider the remaining factors." Michael Smith, 2016 WL 3475723, at *6 (citing Donald Smith, 24 S.W.3d at 283). "When asserting plain error, the defendant bears the burden of persuading the appellate court that the trial court committed plain error and that the error was of sufficient magnitude that it probably changed the outcome of the trial." Michael Smith, 2016 WL 3475723, at *6 (citing State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010)); Banks, 271 S.W.3d at 119; see also State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007).

[10] The factors utilized by the federal courts to guide the exercise of their discretion regarding plain error review are similar:

> [A] court of appeals has discretion to remedy a forfeited error provided certain conditions are met. First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights. . . . Once these three conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error if the error "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'"

> Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016) (citations omitted).

We consider first whether the failure to give the lesser-included offense instruction adversely affected a substantial right of the accused. The substantial right at issue is a criminal defendant's constitutional right to have the jury instructed on all lesser-included offenses supported by the proof. See State v. Ely, 48 S.W.3d 710, 726 (Tenn. 2001); see also Moore v. State, 485 S.W.3d 411, 419–20 (Tenn. 2016).

"[I]n the ordinary case," the Supreme Court has explained, to establish that an error "affected the defendant's substantial rights . . . means he or she must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different."[11] Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 76, 82 (2004)). Where the defendant seeks plain error review, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." Molina-Martinez, 136 S. Ct. at 1349 (Alito, J., concurring) (quoting Olano, 507 U.S. at 734). Where the defendant asserts that the trial court committed plain error by failing to instruct the jury on a lesser-included offense, the defendant must show a reasonable probability that "a reasonable jury would have convicted the defendant of the lesser-included offense instead of the charged offense." State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002) (emphasis omitted) (discussing harmless error analysis where failure to instruct jury on lesser-included offense was properly preserved as error for appeal).[12]

---

[11] The language in Rule 36 of the Tennessee Rules of Appellate Procedure is similar but also provides for relief if the error "would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

[12] In contrast to plain error review, where the defendant properly preserved for appeal the trial court's alleged error in failing to give an instruction on a lesser-included offense, the State bears the burden of showing that the alleged error was harmless beyond a reasonable doubt. In State v. Banks, the Court noted the difference in the burden of proof, depending on whether the defendant is limited to plain error review. As to the jury instructions on lesser-included offenses that were not requested by the defendant at trial, the Banks Court stated:

> Mr. Banks also contends that the trial court erred by failing to charge the jury regarding voluntary manslaughter and facilitation to commit voluntary manslaughter as lesser-included offenses of first degree murder in the perpetration of a robbery. He did not request either instruction. Thus, our review of the failure to charge these offenses is limited to plain error review. Mr. Banks bears the burden of demonstrating the failure to give the voluntary manslaughter and facilitation to commit voluntary manslaughter charges was an error of sufficient magnitude that it probably changed the outcome of trial.

Banks, 271 S.W.3d at 129 (citing Bledsoe, 226 S.W.3d at 354–55). However, as to the lesser-included offense instructions that the defendant requested at trial, Banks explained:

- 12 -

As set forth in Moore v. State, where the jury was given no option to convict of any lesser-included offense, the reviewing court "should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Moore, 485 S.W.3d at 422 (quoting State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002)).[13] Under this analysis, the reviewing court examines: (1) the evidence presented at trial, focusing on the distinguishing element between the greater and lesser offenses; (2) the strength of the evidence of the distinguishing element; and (3) the existence of contradicting evidence of the distinguishing element. Id.

Thus, we must focus on the distinguishing elements between the greater offense of employment of a firearm during the commission of a dangerous felony and the lesser offense of possession of a firearm during the commission of a dangerous felony. As explained in Fayne, under Tennessee Code Annotated section 39-17-1324(b)(1)–(4), employment of a firearm occurs when a defendant "employ[s] a firearm" during the commission or attempted commission of a dangerous felony. Fayne, 451 S.W.3d at 369. The employment offense "contains three elements: (1) that the defendant employed a firearm; (2) that the employment was during the commission or attempted commission of a dangerous felony, or during the flight or escape from the commission or attempted commission of a  dangerous felony; and (3) that the defendant acted intentionally, knowingly, or recklessly." Id. at 369–370. "To be guilty of the possession offense, a defendant must 'possess a firearm with the intent to go armed during the commission of

<hr/>

Mr. Banks argues that the trial court erred by failing to instruct the jury regarding aggravated assault as a lesser-included offense of especially aggravated robbery. He requested this instruction. Therefore, our review assesses whether a reasonable jury would have convicted Mr. Banks of aggravated assault instead of especially aggravated robbery. On this question, the State bears the burden of demonstrating that the error was harmless beyond a reasonable doubt.

Banks, 271 S.W.3d at 129. In the case at bar, the defendant is limited to plain error review because he did not properly preserve his objection for appeal.

[13] Moore v. State involved a post-conviction proceeding arguing ineffective assistance of counsel. Moore, 485 S.W.3d at 414. The error attributed to the defendant's trial counsel was failure to request in writing a jury instruction for a lesser-included offense. Id. at 419–20. After establishing that trial counsel performed deficiently by failing to request the jury instruction in writing, Moore discussed whether trial counsel's deficient performance resulted in prejudice to the defendant. Describing the defendant's burden of proof, Moore explained: "For ineffective assistance of counsel claims arising from the failure to properly request lesser-included offense instructions, the prejudice inquiry assesses whether a reasonable probability exists that a properly instructed jury would have convicted the petitioner of the lesser-included offense instead of the charged offense." Id. at 420–21 (citing Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008)). This is similar to the defendant's burden where, as here, the defendant seeks plain error relief for an omitted jury instruction on a lesser-included offense.

or attempt to commit a dangerous felony.'" Id. at 369 (quoting Tenn. Code Ann. § 39-17-1324(a)). The possession offense "is comprised of three separate elements: (1) that the defendant possessed a firearm; (2) that the possession was with the "intent to go armed"; and (3) that the first two elements occurred during the commission or attempted commission of a "dangerous felony." Id.

A distinguishing element between the employment offense and the possession offense is whether the defendant *employed* his firearm during the commission of the dangerous felony or whether he merely *possessed* the firearm during the commission of the predicate dangerous felony. Accordingly, under Moore, we look at (1) the evidence presented at trial, focusing on whether the proof showed that the defendant employed the firearm during the commission of the predicate dangerous felony, (2) the strength of the evidence of employment of the firearm as opposed to mere possession; and (3) the existence of any contradicting evidence tending to show that the defendant merely possessed the firearm and did not employ it. Moore, 485 S.W.3d at 422.

Our careful review of the entire record[14] reveals that the proof at trial was uncontroverted and overwhelming that the perpetrator *employed* his gun during the carjacking. The victim testified that when she pulled her car up to her boyfriend's mailbox, the perpetrator came up behind her and put his gun to the back of her head. The victim testified that she was "terrified" and afraid that she was going to be shot. The perpetrator then came around from behind the victim and stood about six feet in front of her, all the while pointing the gun at her face.

At trial, the defendant did not dispute the proof that the victim's assailant employed the firearm during the commission of the carjacking; there was no proof to the effect that the perpetrator merely possessed the weapon as opposed to employing it. The defendant's theory of defense was misidentification, not that the firearm was merely possessed instead of employed. The jury returned a verdict convicting the defendant as charged on both counts, indicating that the jury credited the testimony of the State's witnesses.

In light of the overwhelming evidence of employment of a firearm and the misidentification theory of defense, we must conclude that the defendant has failed to show a reasonable probability that, had the trial court given a jury instruction on possession of a firearm during the commission of a dangerous felony, a reasonable jury would have convicted the defendant of the lesser-included offense instead of the charged offense. No reasonable jury would have convicted the defendant of the lesser-included

---

[14] The opening and closing statements were not originally made part of the appellate record. However, we allowed the defendant to supplement the record to support his request for plain error review.

offense. Thus, the defendant has failed to show that the failure to give the lesser-included offense instruction adversely affected a substantial right. See, e.g., Banks, 271 S.W.3d at 129 ("Mr. Banks bears the burden of demonstrating the failure to give the voluntary manslaughter and facilitation to commit voluntary manslaughter charges was an error of sufficient magnitude that it probably changed the outcome of trial. He has not carried this burden, and, in fact, the record demonstrates conclusively that these instructions would have been of no consequence." (citation omitted)); State v. Simpson, No. E2005-02365-CCA-R3-CD, 2007 WL 135609, at *7 (Tenn. Crim. App. Jan. 19, 2007), perm. app. denied (Tenn. May 21, 2007) ("While child abuse and misdemeanor assault are lesser-included offenses of child rape, this court's consideration of this issue is not necessary to do substantial justice because of the overwhelming evidence in the record of the defendant's guilt of aggravated sexual battery, the offense of which he was convicted.").

As noted above, the presence of all five plain error factors must be established before this Court will recognize the existence of plain error. Donald Smith, 24 S.W.3d at 283. The defendant has not established that the trial court's failure to instruct the jury on possession of a firearm during the commission of a dangerous felony affected a substantial right. "If any one of these factors is not satisfied, we need not consider the remaining factors." Michael Smith, 2016 WL 3475723, at *6 (citing Donald Smith, 24 S.W.3d at 283).

Under these circumstances, we do not deem it prudent to analyze whether this Court would adopt for Tennessee the view of the majority or the dissent in Henderson regarding whether an error is considered "plain" so long as the error is plain at the time of appellate review. Resolution of the Henderson question would make no difference to this defendant. The defendant has failed to show that he is entitled to plain error relief on the trial court's failure to instruct the jury on the lesser-included offense of possession of a firearm during the commission of a dangerous felony, so we decline to grant relief on this issue.

**Indictment**

The defendant contends that Count 2 of the indictment, charging him with employment of a firearm during the commission of a dangerous felony, did not inform him of the nature and cause of the charge against him, in contravention of his right under the Sixth Amendment to the United States Constitution[15] and under Article I, section 9 of

---

[15] "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. CONST. amend. VI.

the Tennessee Constitution,[16] and in violation of Tennessee Code Annotated section 40-13-202.[17]  He argues that the reference in Count 2 of the indictment to the statute defining "dangerous felony" was not sufficient to tell him what predicate dangerous felony the State would rely upon at trial, so it did not provide him adequate notice.  As a result, he maintains, the indictment for the firearms charge omitted an essential element of the charged offense and failed to meet constitutional and statutory notice requirements.

We addressed a similar argument in State v. Duncan, No. W2013-02554-CCA-R3-CD, 2016 WL ____, at * _ (Tenn. ___ ___, 2016), released on the same date as this opinion.  In Duncan, the defendant was charged with employment of a firearm during the commission of a dangerous felony as the last count in a five-count indictment.  As in the case at bar, the count of the indictment on the firearm charge did not designate the predicate felony, but only referenced Tennessee Code Annotated section 39-17-1324(i)(1), which defines the term "dangerous felony."  In Duncan, however, the indictment included *two* felonies listed among the offenses that are within the definition of "dangerous felony" contained in Tennessee Code Annotated section 39-17-1324(i)(1).  Reading the indictment as a whole, we held in Duncan that the count of the indictment charging the defendant with employing a firearm during the commission of a dangerous felony sufficiently apprised the defendant of the nature and cause of the accusation against him and enabled him to adequately prepare a defense to the charge.  Since the indictment achieved the overriding purpose of notice to the accused, we held that it was sufficient to satisfy both the constitutional and the statutory requirements.  Duncan, 2016 WL _____, at *__.

Based on our holding in Duncan, we conclude that Count 2 of the indictment in the present case, charging employment of a firearm during the commission of a dangerous felony, satisfies the constitutional and statutory requirements.  Accordingly, we affirm the holding of the Court of Criminal Appeals on this issue.

### Double Jeopardy and Tennessee Code Annotated
### Section 39-17-1324(c)

The defendant also argues that his conviction for employing a firearm during the commission of a dangerous felony violates the prohibitions against double jeopardy.  In

---

[16] "That in all criminal prosecutions, the accused hath the right . . . to demand the nature and cause of the accusation against him. . . ."  Tenn. CONST. art. I, § 9.

[17] "The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment."  Tenn. Code Ann. § 40-13-202 (2014).

addition, he contends that it violates Tennessee Code Annotated section 39-17-1324(c), which prohibits a charge for employment of a firearm during the commission of a dangerous felony if employing a firearm is an "essential element of the underlying dangerous felony as charged." Tenn. Code Ann. § 39-17-1324(c).

We consider double jeopardy first. The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Similarly, Article I, section 10 of the Tennessee Constitution states: "That no person shall, for the same offence, be twice put in jeopardy of life or limb." Three fundamental principles underlie double jeopardy: "(1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." State v. Denton, 938 S.W.2d 373, 378–79 (Tenn. 1996) (citing Whalen v. United States, 445 U.S. 684, 688 (1980), *abrogated on other grounds by* State v. Watkins, 362 S.W.3d 530 (Tenn. 2012)). The defendant's argument in this case involves the third category, multiple punishments for the same offense.

In State v. Watkins, 362 S.W.3d 530 (Tenn. 2012), this Court "restructured Tennessee's double jeopardy analysis in single prosecution cases." State v. Glover Smith, 436 S.W.3d 751, 766 (Tenn. 2014) (citing Watkins, 362 S.W.3d at 556). The Watkins Court adopted the test enunciated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932), for cases involving alleged "multiple punishments for the 'same' offense."[18] Denton, 938 S.W.2d at 379.

Under the two-pronged Blockburger test, the threshold inquiry is whether the defendant's convictions arose from the same act or transaction. Watkins, 362 S.W.3d at 545. If they did not, the state and federal prohibitions against double jeopardy are not implicated, and the inquiry need go no further. Id. If on the other hand the convictions arose from the same act or transaction, then the court is obliged to determine whether the legislature intended to allow the offenses to be punished separately. Id. at 556. "If the General Assembly has expressed an intent to permit multiple punishment[s], no further analysis will be necessary, and multiple convictions should be upheld against a double jeopardy challenge." Id. When the legislature has not clearly expressed its intent, the court must examine the statutes to ascertain whether the crimes constitute the same offense. Id. at 557. See generally State v. Feaster, 466 S.W.3d 80, 84 (Tenn. 2015). The question of whether multiple convictions violate double jeopardy is a mixed question of

---

[18] These claims have also been referred to as "multiple description claims," i.e., "claims [that] arise when a defendant who has been convicted of multiple criminal offenses under different statutes alleges that the statutes punish the same offense." Glover Smith, 436 S.W.3d at 766 (citing Watkins, 362 S.W.3d at 544).

- 17 -

law and fact, reviewed on appeal de novo with no presumption of correctness. Watkins, 362 S.W.3d at 539.

Here, Tennessee Code Annotated section 39-17-1324 contains clear indications of legislative intent to permit multiple punishments. Subsection (d) of that statute states: "A violation of subsection . . . (b) is a specific and *separate offense*, which shall be pled in a separate count of the indictment or presentment and tried before the same jury and at the same time as the dangerous felony." Tenn. Code Ann. § 39-17-1324(d) (emphasis added). Subsection (e) of the statute likewise contains an explicit expression of legislative intent to permit multiple punishments: "A sentence imposed for a violation of subsection . . . (b) *shall be served consecutive to any other sentence* the person . . . is sentenced to serve for conviction of the underlying dangerous felony." Tenn. Code Ann. § 39-17-1324(e)(1) (emphasis added). Thus, the statute contains clear indications that the legislature intended to permit separate punishments for the firearm offense and for the underlying dangerous felony. Watkins, 362 S.W.3d at 545.

The defendant argues, however, that the indictment on the firearm charge violates Tennessee Code Annotated section 39-17-1324(c), which prohibits multiple punishments under certain circumstances. The Court of Criminal Appeals rejected this assertion, and we agree.

As noted above, section 39-17-1324(c) provides that a person may not be charged with employment of a firearm during the commission of a dangerous felony if "employing a firearm is an essential element of the underlying dangerous felony *as charged*." Tenn. Code Ann. § 39-17-1324(c) (emphasis added). Count 1 of the indictment alleges carjacking, the underlying dangerous felony. The statute referenced in the definition of "dangerous felony," section 39-13-404, defines the offense as "the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) A deadly weapon; *or* (2) Force or intimidation." Tenn. Code Ann. § 39-13-404 (a)(1) and (2) (emphasis added). Thus, under the statute, the offense of carjacking may be committed *either* by force or intimidation *or* by the use of a deadly weapon. Tenn. Code Ann. § 39-13-404(a).

As noted by the Court of Criminal Appeals below, in fashioning Count 1 on carjacking, the State had the option of charging the defendant with carjacking either by the use of a deadly weapon or by force or intimidation. In this case, it chose to charge the defendant with carjacking "by force or intimidation." Therefore, as set forth in the indictment and as defined in the statute, the use of a firearm is not an essential element of carjacking alleged to have been committed by the use of force or intimidation. See Tenn. Code. Ann. § 39-13-404(a)(2). The language of section 39-17-1324(c) indicates clearly that the legislature contemplated an indictment of the type in this case and that it intended

- 18 -

to permit dual convictions under these circumstances.  See also State v. Dawson, No. W2010-02621-CCA-R3-CD, 2012 WL 1572214, at *7 (May 2, 2012), perm. app. denied (Sept. 20, 2012).

The defendant argues that the double jeopardy prohibitions have nevertheless been violated because the carjacking in this case was in fact accomplished by the use of a firearm.  The Court of Criminal Appeals was unpersuaded by this argument, and we agree.  A court applying the Blockburger test must examine the elements of the charged offenses in the abstract, as they are stated in the pertinent statutes, without regard to the specific facts in a given case.  State v. Cross, 362 S.W.3d 512, 520 (Tenn. 2012).  The fact that a firearm was the means of accomplishing the force or intimidation does not transform the use of the firearm into an essential element of the carjacking offense if the indictment charged carjacking "by force or intimidation."  See Garrett v. State, No. W2012-01994-CCA-R3-PC, 2014 WL 1410292, at *5–7 (Tenn. Crim. App. Apr. 10, 2014) (concluding that dual convictions for carjacking by force or intimidation and employing a firearm during the commission of a dangerous felony do not constitute double jeopardy); see also Thomas v. State, No. W2012-01646-CCA-R3-PC, 2013 WL 5761398 (Tenn. Crim. App. June 28, 2013) (making a similar finding).

Accordingly, we hold that the defendant's convictions for carjacking and employing a firearm during the commission of a dangerous felony violate neither double jeopardy nor Tennessee Code Annotated section 39-17-1324(c).

## Sufficiency of the Evidence

Finally, the defendant argues that the proof was insufficient to establish his identity as the perpetrator and that the evidence strongly suggest that two other men, whose fingerprints were found on the victim's car, were responsible for the carjacking. We consider the evidence in the light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004).  In our view, the Court of Criminal Appeals satisfactorily addressed and rejected the defendant's claims as to this issue.  See Martin, 2015 WL 555470, at *9–12.

## CONCLUSION

We hold that the victim's prior viewing of the defendant's booking photograph on the county-operated "mug shot" website did not constitute state action and that the trial court therefore properly denied the defendant's motion to suppress the victim's identification of him.  We further hold that the defendant failed to establish that the trial

court's failure to instruct the jury on the lesser-included offense of possession of a firearm during the commission of a dangerous felony affected a substantial right, and so decline to grant the defendant plain error relief. Based on our holding in State v. Duncan, No. W2013–02554-CCA-R3-CD, 2016 WL ____, at * _ (Tenn. ___ ___, 2016), released on the same date as this opinion, we conclude that Count 2 of the indictment in the present case, charging employment of a firearm during the commission of a dangerous felony, satisfies the constitutional and statutory requirements for informing the defendant of the nature and cause of the charge against him. We hold that the defendant's convictions for carjacking and employing a firearm during the commission of a dangerous felony did not violate either double jeopardy or Tennessee Code Annotated section 39-17-1324(c). Finally, we conclude that the evidence was sufficient to support the defendant's convictions. Accordingly, we affirm the judgments of the trial court and the Court of Criminal Appeals. It appearing that the Defendant is indigent, the costs of this cause are taxed to the State of Tennessee.

_____
HOLLY KIRBY, JUSTICE