IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 2, 2021 Session

**STATE OF TENNESSEE v. MARIO MYERS**

**Appeal from the Criminal Court for Shelby County**
**No. 16-03621    James M. Lammey, Judge**

_____

**No. W2020-00337-CCA-R3-CD**
_____

A Shelby County jury convicted the defendant, Mario Myers, of aggravated sexual battery for which he received a twelve-year sentence. On appeal, the defendant asserts the trial court erred in denying his right to self-representation and challenges the sufficiency of the evidence supporting his conviction. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS and CAMILLE R. MCMULLEN, JJ., joined.

Joshua J. Roberts (on appeal), Germantown, Tennessee and Jason Matthews (at trial), Memphis, Tennessee for the appellant, Mario Myers.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lessie Rainey and Cavett Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural History*

A Shelby County grand jury indicted the defendant for one count of aggravated sexual battery committed against his seven-year-old victim, J.S,[1] who was born on January 3, 2007. Tenn. Code Ann. § 39-13-504(a)(4). The crime occurred on August 11, 2014, at

---

[1] It is the policy of this Court to refer to minor victims and their family members by initials only. Therefore, the victim will be referred to as "the victim" or "J.S." and his mother and aunt will be referred to as "T.B." and "R.B.," respectively.

the home of R.B., the victim's aunt. At the time, R.B. was in a relationship with the defendant and had agreed with the victim's mother, T.B., to drive the victim to school each morning. That day, however, R.B. left the victim alone at her home with the defendant as she took her own son to school. While R.B. was gone, the defendant approached the victim, who was in his cousin's bedroom, told the victim to bend down, and placed his penis on the victim's lips. After approximately five seconds, the victim pushed the defendant away and ran out of the room. When R.B. returned home, the victim told her what the defendant did and then went to school.

Around noon, T.B. received a telephone call from R.B. who stated that the victim disclosed that "something happened with [the defendant] doing something to [the victim]." After the telephone call, T.B. went to the victim's school and informed the school counselor of the allegations. The school counselor spoke to the victim and then contacted the police.

Officer Bryant Brooks of the Memphis Police Department responded to the school and created an initial report which detailed T.B. and the victim's narratives of the allegations. While the victim was talking to the police, T.B. described the victim as "kind of anxious" and "eager to tell something had happened." Afterwards, T.B. planned to take the victim to the hospital but went home instead as she was overwhelmed. On August, 26, 2014, Letitia Cole of the Memphis Child Advocacy Center performed a forensic interview of the victim, which was played for the jury during trial. Ms. Cole also photographed the victim, and the photograph was entered into evidence.

Retired Lieutenant Marlon Wright investigated the victim's case as part of a Child Protective Investigation Team ("CPIT"). In doing so, he observed the victim's forensic interview and developed a person of interest named "Mario." However, it took several months for police to identify the defendant as a suspect because T.B. did not know the defendant's last name and R.B. would not provide it to her. Because he knew the defendant was dating R.B., Lieutenant Wright unsuccessfully attempted to contact her numerous times. Several months later, T.B. learned the defendant's last name and informed Lieutenant Wright. After failing to contact the defendant, Lieutenant Wright met with the CPIT, and the team issued a warrant for the defendant's arrest. Finally, based upon the information provided during the victim's forensic interview, Lieutenant Wright explained it was not necessary for the victim to participate in a physical forensic examination, or for law enforcement to investigate or photograph a specific crime scene.

When the victim testified at trial, he was twelve years old. He identified the defendant in court and provided additional details of the crime. The victim remembered being alone with the defendant at R.B.'s home one morning while she took the victim's cousin to school. The victim was in his cousin's bedroom when the defendant entered and told him to "bend down." The victim stated he was on his knees, and the defendant "put

his weener (sic) in my mouth." More specifically, the defendant put his penis on the victim's lips for approximately five seconds. The victim then "pushed [the defendant] back and ran to the living room." The victim was "a little scared" after the defendant made a statement regarding what might happen if the victim told someone about the defendant's actions, but the victim could not recall specifically what the defendant said. When R.B. returned home, the victim told her what happened, and R.B. "got onto" the defendant "because [the defendant] had put his penis in [the victim's] mouth."

The victim went to school that day but did not recall speaking with the school counselor or police though he did remember R.B. crying on the telephone when his mother picked him up from school. The victim acknowledged that he participated in and told the truth during a forensic interview at the Memphis Child Advocacy Center. The victim testified he watched the video of the interview but did not remember the interview otherwise. While acknowledging he had claimed during his interview that there was a second incident with the defendant, the victim denied a second incident at trial. Finally, the victim testified that he tries not to think about what the defendant did, but when he does think about it, he is not scared like he was at the time it happened.

The State rested its case, and the defendant moved for a judgment of acquittal. The trial court then attempted to conduct a *Momon* hearing. The defendant, however, was uncooperative, and the trial court ultimately held him in contempt. Additionally, at the outset and throughout the trial, the defendant made several oral requests to represent himself, all of which were denied by the trial court. Ultimately, the defendant did not present any proof, and the jury convicted him of aggravated sexual battery. The trial court imposed a twelve-year sentence for the crime and denied the defendant's motion for a new trial.[2] This timely appeal followed.

### *Analysis*

#### I. *Sufficiency of the Evidence*

The defendant argues the evidence is insufficient to support his conviction for aggravated sexual battery because there is no physical evidence from or witness to the crime. As a result, the defendant asserts "the [j]ury was forced to rely primarily on the testimony of the minor victim" which was "inconsistent" and "largely manipulated and induced by the video of his previous forensic interview." The State argues the evidence was sufficient to support the defendant's conviction for aggravated sexual battery, and we agree.

---

[2] The trial court ran the defendant's sentence in this case consecutively to the sentence imposed in case number 16-00893.

- 3 -

When the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the

inferences to be drawn from this evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

The defendant was convicted of aggravated sexual battery. "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant" where "the victim is less than thirteen years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). "'Intimate parts' includes . . . the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

Here, the proof established that the victim was seven years old on August 11, 2014. At the time, the defendant was dating the victim's aunt, R.B., who drove the victim to school each day. That morning, however, R.B. left the victim alone with the defendant at her home. The defendant approached the victim, told the victim to bend down, and then placed his penis on the victim's lips for approximately five seconds. The victim pushed the defendant away and ran from the room. The victim disclosed the defendant's actions to R.B. when she returned home, and R.B. "got onto" the defendant. The victim went to school after which R.B. disclosed the defendant's actions to the victim's mother, T.B., who went to the victim's school and informed the school counselor of the defendant's actions. The counselor spoke to the victim and called the police. The victim later participated in a forensic interview where he again disclosed the defendant's abuse. Officer Brooks, Lieutenant Wright, and the CPIT investigated the victim's allegations against the defendant which ultimately led to the defendant's arrest.

The defendant argues the evidence is insufficient to sustain his conviction because the victim's testimony was inconsistent and there was no physical evidence to establish the crime. However, "there is no requirement that the victim's testimony be corroborated," and, we disagree with the defendant's contention as the record indicates the victim provided a consistent description of the defendant's actions, placing his penis on the victim's mouth for five seconds, throughout the investigation which he also described at trial. *State v. Smith*, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000); *see also State v. Joseph Lester Haven*, No. W2018-01204-CCA-R3-CD, 2020 WL 3410242, at *9 (Tenn. Crim. App. June 19, 2020) (holding even absent physical evidence of a crime, a victim's testimony need not be corroborated to sustain convictions for rape of a child and aggravated

sexual battery). In addition, Lieutenant Wright explained it was not necessary to conduct a physical examination of the victim or of the crime scene based upon the allegations. Accordingly, sufficient evidence exists to show the defendant committed aggravated sexual battery against the victim, and the defendant is not entitled to relief.

## II. Self-representation

The defendant argues "the [t]rial [c]ourt acted erroneously when [it] denied the defendant's request for self-representation, despite the fact that his request was unequivocal, timely, and was made knowingly and intelligently." The defendant asserts the alleged error is a structural, constitutional error that requires automatic reversal. The State argues the defendant has waived this claim for failing to raise it in his motion for a new trial and, even though not requested, asserts the defendant is not entitled to plain error review of this issue. Upon our review, we conclude this issue is waived, and the defendant is not entitled to plain error review.

Initially, we note, the record makes clear that the defendant made several requests to represent himself throughout the trial, and the trial court denied each request. The record also makes clear that the defendant failed to specifically allege as error in his motion for a new trial the trial court's denial of his right to self-representation. Instead, the defendant alleged that he "was prejudiced in that he would not confer with counsel and should have been appointed new counsel." We do not find this allegation sufficient to preserve the issue regarding his right to self-representation on appeal as it is well-settled that:

> . . . [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). Because the defendant failed to specifically raise the alleged error of the trial court regarding its denial of his right to represent himself in his motion for a new trial, the issue is waived, and the defendant is not entitled to relief. *Id.*

The State further argues the defendant is not entitled to plain error relief despite failing to request the same, and we again agree. Under the plain error doctrine, a defendant may obtain relief only if all of the following criteria are satisfied: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the issue was

not waived for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010).

Here, the record does not clearly establish what occurred in the trial court prior to the court's denial of the defendant's request to proceed pro se. Not only is it unclear if the defendant requested to represent himself prior to trial, but also it is unclear if the trial court conducted a hearing prior to its ruling. As is pertinent to this appeal, the record includes the following exchange which occurred at the outset of trial:

> The Court: Mr. Myers, you have this one-count indictment for aggravated sexual battery. It's been pending for a while now. You went to trial on the other case. Who represented you on that other case?
>
> [Defense Counsel]: Dewun Settle.
>
> The Defendant: For the record, I have always represented myself from the beginning, sir.
>
> The Court: Yes, sir.
>
> The Defendant: Any other representation by any attorney from the State was by unconscionable dealings and by material alteration –
>
> The Court: Right.
>
> The Defendant: -- of the instruments for the record.
>
> The Court: And I found in the past and I'll find again that you're not qualified to represent yourself. You aren't even talking about the same laws that apply to the rest of us, Mr. Myers. And I would I beseech you to consider helping your attorney because I think the last time you didn't help your attorney, it didn't turn out too well.

As outlined above, while the trial court clearly denied the defendant's request to represent himself, the record fails to establish what occurred in the trial court prior to the court's ruling. Furthermore, during oral argument, this Court asked the parties to explain the ruling of the trial court, but neither party was able to provide information regarding the context of the ruling. Therefore, while it is clear the trial court unequivocally denied the defendant's request to represent himself, the record fails to establish whether the defendant requested to represent himself prior to trial or whether the trial court conducted a hearing

regarding the request prior to trial. Accordingly, the record is unclear, and, even though not requested, plain error review is not warranted. *Martin*, 505 S.W.3d at 504; *Hester*, 324 S.W.3d at 56. This issue is without merit.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE