IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

## STATE OF TENNESSEE v. DARON LEKITHE MOSS

**Appeal from the Circuit Court for Hardeman County**
**No. 16-CR-160     J. Weber McCraw, Judge**

### No. W2018-00038-CCA-R3-CD

The Defendant, Daron Lekithe Moss, was convicted by a jury of one count of rape. On appeal, the Defendant contends that (1) the evidence was insufficient to sustain his conviction; (2) the prosecutor made improper and inflammatory comments during closing argument; and (3) the State failed to include a witness who testified at trial in the original indictment.[1] Following our review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

J. Colin Rosser (on appeal), Somerville, Tennessee; and Christie Rushing Hopper (at trial), Jackson, Tennessee, for the appellant, Daron Lekithe Moss.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

---

[1] For clarity and ease of discussion, we have reordered the issues as they are set forth in the Defendant's brief.

This case arose after the rape of the fourteen-year-old victim, C.S.F.,[2] on October 15, 2013. On September 6, 2016, a Hardeman County grand jury charged the Defendant with one count of rape.[3] See Tenn. Code Ann. § 39-13-503. The Defendant proceeded to a trial on the rape charge on May 22, 2017.

The victim testified that he was eighteen years old and lived with his mother. The victim testified that in 2013, he was close friends with a neighbor his age, who lived with his grandmother, Patricia Ann Fingers. The victim "got together and played" with this friend "all the time." Consequently, the victim was often at Ms. Fingers's home. Additionally, the victim would stay at Ms. Fingers's home while his mother worked.

When asked if an incident occurred in October 2013, the victim replied, "I got raped." The victim then identified the Defendant as the man who raped him. The victim said that on the day of the attack, he had been suspended from school and was staying at Ms. Fingers's home because his mother was at work. The victim explained that the Defendant was at Ms. Fingers's home that day and that the incident began with the Defendant's asking the victim if he had "ever done something with a dude[.]" The victim said no, and the Defendant sat down on the couch next to the victim and began touching the victim's thigh. The victim stated that this made him uncomfortable and said that he attempted to "fight back" against the Defendant. The victim said that the Defendant "pinned [him] down" on his stomach on the couch and that the Defendant "grabbed [him] by the arms" and "pull[ed the victim's] pants down[.]" The victim testified that the Defendant penetrated him with his penis in his anus and that as the Defendant penetrated the victim, he repeatedly said the victim's nickname. The victim stated that he remembered the Defendant was wearing plaid boxer shorts because the Defendant had also pulled down his own pants. When asked what happened after the incident, he said that the Defendant warned him that if he ever told anyone about the rape, the Defendant would "kill [the victim] and [his] family."

The victim admitted that previously he had been in some "trouble in Juvenile Court." However, he agreed that he had "already been punished for all that trouble" and that he had nothing to gain by making up such a story about the Defendant. The victim asserted that he would not fabricate being raped and that the incident was difficult for

---

[2] It is the policy of this court to protect the identity of minor victims. Therefore, we will use initials for the minor victim involved in this case. In furtherance of this policy, we will also use initials for family members of the victim.

[3] The original indictment in this case incorrectly stated the victim's birthdate and that the victim was thirteen years old at the time of the incident. An amended indictment was filed, which correctly stated the victim's birthdate and that he was fourteen years old at the time of the incident.

him to discuss. The victim stated, "I felt like my manhood had been taken. It's sad because, I mean, like- it's sad because it's sick and it's embarrassing for me to talk about." The victim testified that he did not tell anyone about the rape initially. Eventually, he disclosed the incident to his sister, his mother, and then his therapist.

L.M.F. testified that she was the victim's mother. L.M.F. said that because the victim was a minor, he would stay with a neighbor, Ms. Patricia Ann Fingers, after school until L.M.F. returned home from work. Ms. Fingers's grandson lived with her, and he and the victim were the same age and became "the best of friends." The two "played together all the time[,]" and the victim spent a great deal of time at Ms. Fingers's home.

L.M.F. explained that the victim had previously had some behavioral issues and that he had been to juvenile court for various matters including "an attempted assault" and "a couple of forgeries[.]" The victim also went to juvenile court for matters involving possession of drug paraphernalia and "a disorderly conduct" incident. Aside from the disorderly conduct, all of these incidents occurred before October 2013. L.M.F. testified that she noticed a change in the victim's behavior after October 2013. She explained,

> [The victim] became withdrawn. He didn't want me to touch him. He started having nightmares. He became very argumentative. If I would tell him something, he became very rebellious because he'd say, "You don't listen [to] nothing [sic] I say. You're not hearing me when I come try to [talk] to you[.]" He became kind of a defiant, agitated, aggressive child.

L.M.F. said that the victim did not act in such a manner prior to October 2013 despite his "troubles in [j]uvenile court[.]" She stated that the victim "was always a passive child" and would say, "I'm sorry." However, after October 2013, he "never said he was sorry[,]" and L.M.F. did not know the reason for this change in behavior and demeanor. L.M.F. said that she transferred the victim to a different school, but he "seemed to be paranoid" and "didn't want anybody to sit behind him in the classroom." When asked what further actions she took to address the victim's behavior, L.M.F. explained that she took him to see a therapist, Ms. Barbara Shelton, "every two weeks or every week or whenever was necessary[.]"

L.M.F. said that the victim disclosed the rape to her in February or March of 2014. She stated,

> I had picked [the victim] up from the alternative school and . . . we were beginning to talk and I said, "What can I do to help you because I've

-3-

done all I can to help you" and he said, "You're not listening to me." He began to cry and he began to beat on the dashboard, just had a meltdown, just screaming and hollering, in the car. And I said, ". . . don't jump out of this car" and I said, "What is wrong with you" and he said, "I have been raped." And I said, "What did you say[?]" He said, "I have been raped by [the Defendant]."

L.M.F. explained that upon hearing this, she called Ms. Shelton and took the victim to see her. When asked how the victim's rape had affected their family, L.M.F. replied, "It has totally destroyed us. It has been so traumatic as a result [of] that incident." She testified that the victim had been to seven mental health institutions, that he was behind in school, and that she had moved her family to a different town.

Ms. Shelton, who was employed as a clinical outpatient therapist at Pathways Behavioral Health in Jackson, Tennessee, testified as an expert in the field of adolescent and child therapy. Ms. Shelton was the victim's therapist, and she began working with him in November 2013. When asked what type of therapy she was doing with the victim, she replied, "[c]ognitive behavioral therapy" and explained that this included "changing the thoughts and feelings of behaviors that the client [was] exemplifying whether it be anxiety, depression, [or] panic attacks." Ms. Shelton said that in reference to the victim's behavior, she helped him deal with "depression[,]" "some anxiety[,]" and "anger management[.]" Ms. Shelton explained that when a child exhibits such behaviors, "[t]here always is" a "root cause." Ms. Shelton testified that "once you build a relationship with [clients], get them comfortable, they just kind of let you know what's going on."

Ms. Shelton affirmed that the victim made a disclosure to her in February 2014. She explained that the victim told her that someone he knew had sexually abused him. Ms. Shelton said that the victim revealed that the sexual abuse had been a rape and that he was "very detailed and specific" when he explained the incident to her. When asked to describe the victim's demeanor during this conversation, she said that he "was crying[,]" "was angry[,]" and "was really upset[.]"

Greg Moore testified that he was a captain with the Hardeman County Sheriff's Office and led the "Criminal Investigation Division." He testified that he investigated the rape of the victim and that he first spoke to the victim on September 29, 2014. Captain Moore said that the incident occurred in October 2013. Captain Moore testified that based on his investigation, he determined that the Defendant raped the victim at Ms. Fingers's home, located in Hardeman County. When asked if he discovered any reason for a delay in the victim's reporting of the rape, Captain Moore replied,

In speaking with the victim, he was extremely embarrassed, [the incident] was difficult for him to talk about it, and that was [the victim's] explanation. [The victim] did indicate that he may have mentioned it to his sister at some point in time but . . . he was so upset about it that it eventually came to a head and that was why – that was what led law enforcement to be there, to come out.

Captain Moore also testified that the victim told him that the Defendant threatened him if he disclosed the incident. Specifically, Captain Moore said that the victim revealed that the Defendant threatened to kill him and his family if he told anyone. Captain Moore explained that the victim was "reluctant and very emotional" but was able "to tell [him] what happened." He testified that no DNA evidence was obtainable at the time the victim reported the incident.

Captain Moore conducted an oral interview with the victim. He did not obtain a written statement from the victim, but he took notes from the victim's interview in 2014. Captain Moore attended the preliminary hearing in this case and confirmed that the victim's testimony at the hearing was consistent with the victim's interview. When asked if he was able to "get a reliable statement from the [D]efendant that would in any way exonerate him in this matter[,]" Captain Moore said, "No."

Anthony Jones identified the Defendant and testified that he was a cellmate of the Defendant while incarcerated. Mr. Jones testified that the Defendant revealed to him that he "had sex with a male under the age of fourteen" and that "it happened at . . . Ann Fingers'[s] house." Contrary to the victim's testimony, Mr. Jones testified that the Defendant told him it happened on more than one occasion.

Patricia Ann Fingers testified that the Defendant was her cousin. She explained that she used to babysit the victim and that the victim would often come to her house to play games with her grandson. She stated that she did not recall ever leaving the Defendant in a room alone with the victim. Ms. Fingers said that there were times when both the victim and the Defendant were in her house, but she insisted that she never left the victim alone with the Defendant.

At the conclusion of the trial, the jury found the Defendant guilty of one count of rape. Following a sentencing hearing, the Defendant was sentenced to ten years' confinement with the Tennessee Department of Correction. The Defendant filed a timely notice of appeal.

## ANALYSIS

### I. Sufficiency

On appeal, the Defendant argues that there was insufficient evidence to support his conviction for rape. Specifically, he argues that the State failed to produce any physical evidence linking the Defendant to the crime and argues that the victim's waiting to report the rape "allowed for any sort of physical evidence to be spoiliated [sic] and create a reasonable doubt that any rape actually occurred[.]" The State responds that the evidence was sufficient to support the Defendant's conviction. We agree with the State.

An appellate court's standard of review when the Defendant questions the sufficieny of the evidence on appeal is "whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

"Direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference[.]" Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

As relevant here, rape is defined as "unlawful sexual penetration of a victim by the defendant" when "force or coercion is used to accomplish the act." Tenn. Code Ann. § 39-13-503. "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Tenn. Code Ann. § 39-13-501(7).

The identity of the perpetrator is an essential element of any crime. State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)).

The Defendant argues that no physical evidence corroborated the victim's testimony; however, "it has long been the rule in our state that the uncorroborated testimony of a minor victim may be sufficient to sustain a conviction for forcible or coercive sex offenses such as simple rape." State v. Collier, 411 S.W.3d 886, 899 (Tenn. 2013). Furthermore, "[t]his court has repeatedly said that the State is not required to present physical evidence to corroborate a victim's testimony." State v. Cordalle Benton, No. W2016-00323-CCA-R3-CD, 2016 WL 4706850, at *5 (Tenn. Crim. App. Sept. 6, 2016) (citing State v. Shaun Royal Hill, No. W2015-00710-CCA-R3-CD, 2016 WL 3351817, at *6 (Tenn. Crim. App. June 9, 2016); State v. David Neal Davis, No. M2009-00691-CCA-R3-CD, 2011 WL 1631828, at *14 (Tenn. Crim. App. Apr. 19, 2011), perm. app. denied (Tenn. Aug. 31, 2011); State v. Bobby B. Barrett, No. W1999-02002-CCA-R3-CD, 2000 WL 1840073, at *8 (Tenn. Crim. App. Dec. 12, 2000), perm. app. denied (Tenn. May 21, 2001)).

Here, there is sufficient evidence to support the Defendant's conviction for rape. The victim testified that the Defendant forcibly held him down and raped him while the two were alone at his babysitter's house. Both L.M.F. and Ms. Shelton testified that the victim revealed to them that the Defendant raped him. Additionally, Mr. Jones testified that the Defendant admitted to him that he "had sex with a male under the age of fourteen" and that it occurred at Ms. Fingers's home.

The victim's mother testified about the victim's change in behavior around the date of the incident. After confirming that the victim had some prior problems with juvenile court, L.M.F. testified that there was a distinct change in the victim's behavior after October 2013. The victim explained that he was embarrassed to disclose the rape because he was ashamed and afraid of the Defendant. Ms. Shelton, testifying as an expert in adolescent and child therapy, said that there was often an underlying cause to an adolescent or child's behavioral changes. Ms. Shelton also explained that she must first build a relationship with a child before learning the underlying trauma. In this case, the victim attended regular therapy sessions with Ms. Shelton prior to disclosing the rape.

-7-

Thus, there is ample testimony explaining the victim's waiting several months before reporting the rape. Moreover, the Defendant threatened to harm the victim and his family if he told anyone about the incident. While there is no physical evidence linking the Defendant to the crime, there is sufficient evidence to support his conviction. Therefore, the Defendant is not entitled to relief regarding this issue.

## II. Closing Argument

The Defendant contends that the prosecutor made improper comments during closing argument. The State responds that the Defendant has waived review of this issue by failing to raise a contemporaneous objection. We agree with the State.

During his closing argument, the prosecutor argued that the State had successfully proven all of the elements of rape. The prosecutor also argued that the victim would not fabricate a story about being raped by the Defendant because it would be "embarrassing" and "degrading to a teenage boy[.]" He reasoned,

> [Defense counsel] might tell you [the victim] made that up . . . because he had been in trouble and he needed to deflect. Trust me, if I'm in trouble, it is going to be some story besides some guy put his pecker up my butt. You ain't never going to hear that. That's not the story you make up.

First, we conclude that the Defendant waived review of the issue regarding the prosecutor's comments. Here, the Defendant failed to raise a contemporaneous objection during closing argument, thus waiving plenary review of his claim on appeal. See Tenn. R. App. P. 36(a) (providing that appellate relief is not available for a party who "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error"); State v. Robinson, 146 S.W.3d 469, 518 (Tenn. 2004) (holding that the issue of prosecutorial misconduct during closing argument is waived if the defendant does not make a contemporaneous objection). Accordingly, the Defendant is not entitled to relief on appeal unless the prosecutor's remarks constitute plain error. See Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). The State contends that the Defendant has not shown his entitlement to plain error relief.

There are five factors that must be established before an error may be recognized as plain:

> (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the

accused was adversely affected, (4) the issue was not waived for tactical reasons, and (5) consideration of the error is necessary to do substantial justice.

State v. Minor, 546 S.W.3d 59, 70 (Tenn. 2018) (citing State v. Martin, 505 S.W.3d 492, 504 (Tenn. 2016); State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010)).  The burden is on the defendant to establish all five factors, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Id.  Furthermore, the error must be "clear" or "obvious," State v. Bledsoe, 226 S.W.3d 349, 354 (Tenn. 2007), and must be of "such a great magnitude that it probably changed the outcome of the trial."  State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000).

Our supreme court has summarized prosecutorial misconduct regarding closing arguments as follows:

> The basic purpose of closing argument is to clarify the issues that must be resolved in a case.  State v. Banks, 271 S.W.3d 90, 130 (Tenn. 2008).  While "argument of counsel is a valuable privilege that should not be unduly restricted,"  Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975), "such . . . arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law."  State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003); Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995); see also State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999).  Because closing argument affords an opportunity to persuade the jury, 11 David L. Raybin, Tennessee Practice: Criminal Practice and Procedure § 29.2, at 97 (2008), leeway should be given regarding the style and substance of the argument.  Banks, 271 S.W.3d at 131; State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998).  Hence, counsel may employ "forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence." Banks, 271 S.W.3d at 131.

State v. Sexton, 368 S.W.3d 371, 418-19 (Tenn. 2012).

The court has also advised that a criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument.  Banks, 271 S.W.3d at 131 (citing United States v. Young, 470 U.S. 1, 11-13 (1985); State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001) (holding that a prosecutor's improper closing argument does not automatically warrant reversal)).  "An improper closing argument will not

constitute reversible error unless it is so inflammatory or improper that it affected the outcome of the trial to the defendant's prejudice." Id. (citing State v. Thacker, 164 S.W.3d 208, 244 (Tenn. 2005) (appendix); State v. Cribbs, 967 S.W.2d 773, 786 (Tenn. 1998)); see also State v. Reid, 164 S.W.3d 286, 321 (Tenn. 2005). Here, the prosecutor's comment was not so inflammatory as to affect the outcome of the trial. While the prosecutor's comments do not rise to the level of affecting the verdict in this case, we cannot agree that such ribald language comports with counsel's duty to advocate within the parameters of courtroom propriety and decorum. However, given the strength of the State's evidence against the Defendant, it is not likely that the prosecutor's comment affected the jury's decision. Thus, consideration of the prosecutor's comment is not necessary to do substantial justice. The Defendant is not entitled to relief regarding this issue.

### III. Witness Testimony

The Defendant also argues that he did not receive adequate notice that the State planned to call Mr. Jones as a witness at trial. Specifically, he argued that Mr. Jones "was revealed to be a witness at a later time during the legal process of trial preparation, and [the Defendant] alleges this as a factor of an insufficient amount of time to prepare for [Mr.] Jones as a witness in [defense] counsel's trial preparation." The State argues that the Defendant has waived review of this issue. We agree with the State.

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides in part that a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Rule 10 of this court, which addresses inadequate briefs, provides, in relevant part, that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). The Defendant includes his claim regarding Mr. Jones in the middle of his sufficiency challenge without presenting any argument stating reasons why his contention requires appellate relief. In addition, the Defendant fails to cite to any authorities or make appropriate references to the record. Therefore, he has waived this issue for failing to comply with these rules. See, e.g., Martin Dean Gibbs v. State, No. M2016-00218-CCA-R3-PC, 2016 WL 5944992, at *3 (Tenn. Crim. App. Oct. 13, 2016) (declining to review the petitioner's ineffective assistance of counsel claims due to an inadequate brief), perm. app. denied (Tenn. Feb. 16, 2107). Moreover, the Defendant failed to raise a contemporaneous objection to Mr. Jones's trial testimony. See Tenn. R. App. P. 36(a) (providing that appellate relief is not available for a party who "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error"); see also State v. Gilley, 297 S.W.3d 739, 762 (Tenn. Crim. App.

-10-

2008) ("The failure to make a contemporaneous objection constituted waiver of the issue on appeal.")

Furthermore, the Defendant is not entitled to plain error review. The record indicates that the Defendant received notice that the State intended to call Mr. Jones as a witness in December 2016, five months prior to the Defendant's trial. That provided the Defendant with ample time to prepare for Mr. Jones's testimony. A substantial right of the Defendant has not been affected, and the Defendant is not entitled to relief regarding this issue.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE