IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 6, 2020 Session

**STATE OF TENNESSEE v. GREGORY GOFF**

**Appeal from the Circuit Court for Madison County**
**No. 19-465   Roy B. Morgan, Jr., Judge**

_____

**No. W2020-00153-CCA-R3-CD**

_____

A Madison County jury convicted the defendant, Gregory Goff, of especially aggravated robbery and aggravated assault for which he received an effective thirty-five-year sentence. On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions and the trial court's jury instruction regarding self-defense. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Jessica F. Butler, Assistant Public Defender, Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal) and Jeremy B. Epperson, Assistant Public Defender, Jackson, Tennessee (at trial), for the appellant, Gregory Goff.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On March 8, 2019, the defendant attacked the victim, Marshall DeBerry, with a hatchet as the two conversed at a bus stop located near the In Town Apartments in Jackson, Tennessee. After doing so, the defendant took $13.00 and a $20.00 bus card from the victim's pocket. Apart from Joe Taylor, a mutual acquaintance of both the victim and the defendant, no one else was in the area at the time of the attack. For his actions, a Madison

County grand jury indicted the defendant for especially aggravated robbery and aggravated assault. Tenn. Code Ann. §§ 39-13-102(a)(1)(A), -403. The defendant proceeded to trial where the following facts emerged.

The victim used crack cocaine on the morning of March 8, 2019, before meeting Mr. Taylor at approximately 2:00 p.m. As the two talked, the defendant, whom the victim did not know, joined them. The victim soon left the group in order to buy alcohol at a nearby liquor store. Prior to purchasing a $2.00 bottle of vodka, the victim had $15.00 and a $20.00 bus pass in his front jacket pocket. Thus, when he left the liquor store and rejoined the defendant and Mr. Taylor, the victim had $13.00 and the bus pass in his pocket.

The victim, the defendant, and Mr. Taylor proceeded to drink the bottle of vodka after which the defendant asked the victim for $5.00. The victim responded that he "didn't have it" and began walking away. As he did, the defendant approached the victim from behind and hit the victim in the head three times with a hatchet. At the time, the victim did not know what type of weapon the defendant used as he had not seen the defendant with a weapon prior to the attack. However, the victim recalled the defendant's fist was clenched and it appeared the defendant was holding something inside his jacket sleeve.

The victim described the attack in further detail, stating the defendant first hit the left side of the back of his head. The defendant then immediately hit the right side of the back of the victim's head. Finally, the defendant hit the victim's ear, causing the victim to fall and briefly lose consciousness. When the victim woke, he was still on the ground, his head was burning, and he felt dazed. The victim saw Mr. Taylor "holding [the defendant] back" and shouting "why you hit him." As the defendant, who was holding a hatchet with a wooden handle, attempted to break free of Mr. Taylor's grasp, the victim fled the scene. The victim testified that he did not see the defendant take $13.00 or his bus pass, but both items were missing after the attack and he believed the defendant took them. The victim stated though the attack happened quickly, he feared for his life.

After leaving the area, the victim stopped Officer Will Seward of the Jackson Police Department and reported he was attacked by a black male wearing black clothing. The victim did not report any missing property to Officer Seward at the time. At trial, Officer Seward described his interactions with the victim, noting that when the victim approached him, the victim "was bleeding from his head from a large laceration." Officer Seward photographed the victim's injuries, copies of which were entered into evidence. In addition to the injuries, Officer Seward also observed signs of intoxication on the victim, including the smell of alcohol, and noted the victim admitted to drinking though he did not disclose any drug use. Officer Seward prepared a police report within which he described the victim as "extremely intoxicated." However, at trial, Officer Seward explained he did not know the victim's level of intoxication at the time of the crimes, noting the victim did not have

slurred speech but his eyes were glassy and the victim was "a little unsteady, but he also had a head wound." The victim testified that he did not consider himself "extremely intoxicated" at the time as he was no longer high and only had one drink of vodka before the crimes.

Due to his injuries, EMS responded to the scene and provided first aid to the victim. The victim initially refused medical attention and did not go to the hospital because he was angry. After approximately four hours, however, the victim experienced significant bleeding and ultimately went to the hospital where he remained overnight. The victim received nearly thirty staples to his head and ear and suffered a skull fracture as a result of three separate lacerations. At the time of trial, the victim stated he is able to function and maintain employment though he still experiences pain and occasional dizziness and his head remains scarred and disfigured in areas. The victim also acknowledged a 2015 theft conviction.

Regarding the investigation, Officer Seward testified he was unable to identify a suspect on March 8, 2019. However, the investigation progressed after Investigator Joey Williams of the Jackson Police Department interviewed and obtained written statements from both the victim and Mr. Taylor. During the interviews, the victim provided a description of his attacker as a "black male, stocky build, 40 to 50 years of age," and Mr. Taylor stated the defendant carried a hatchet. As a result, Investigator Williams developed the defendant as a suspect, created a photographic lineup which included the defendant's picture, and presented the lineup to the victim. The victim identified the defendant as his attacker and on the back of the lineup, wrote, "that's who attacked me with a hatchet. He took $13.00 and my $20.00 bus card." Investigator Williams testified the victim was "very positive" in his identification of the defendant. The photographic lineup was entered into evidence.

Investigator Williams did not locate the weapon during the investigation but obtained the victim's medical records, certified copies of which were entered into evidence. Investigator Williams acknowledged the records described the victim's level of pain as "moderate" and indicated the victim "admits to ETOH use today." Investigator Williams did not know to what "ETOH use" referred but noted the victim was forthcoming about his alcohol and cocaine use on the day of the incident.

Mr. Taylor also testified. On March 8, 2019, he and the defendant drank gin together before they encountered the victim around 2:00 p.m. After their initial gathering, Mr. Taylor and the defendant went to the liquor store where Mr. Taylor bought more alcohol. Mr. Taylor and the defendant returned to the area of the In Town Apartments and reunited with the victim. At the time, Mr. Taylor was the only person drinking and did not recall if the victim had a bottle of vodka that was passed among the men.

While his back was turned to the victim and the defendant, Mr. Taylor heard a "commotion" that "sounded like something like you just picked up and just dropped it." When he turned around, Mr. Taylor saw the victim lying on the ground surrounded by a pool of blood. The defendant was standing over the victim, and no one else was in the area at the time. Mr. Taylor "got in between" the defendant and the victim, and the defendant yelled to the victim, "Get your hands out your pocket." Mr. Taylor believed the defendant "felt threatened . . . as if [the victim] might have had something in his pocket." However, Mr. Taylor did not see the victim with a weapon and did not see the victim threaten the defendant.

After separating the two, Mr. Taylor told the defendant to leave the victim alone, and the three men dispersed. Mr. Taylor did not know why the defendant attacked the victim, noting he did not witness a disagreement between the victim and the defendant. Further, Mr. Taylor testified he did not see the defendant attack the victim, did not see the weapon used by the defendant, and did not see the defendant take anything from the victim. After reviewing his written statement, Mr. Taylor acknowledged he told Investigator Williams that the defendant usually carried a hatchet. Mr. Taylor, however, clarified he did not see the defendant with a hatchet on March 8, 2019, or at any other time. Finally, Mr. Taylor stated that the defendant called him from jail, the two began yelling, and Mr. Taylor hung up the phone.

At the conclusion of the proof, the jury convicted the defendant of especially aggravated robbery and aggravated assault. The trial court subsequently merged the convictions and imposed an effective sentence of thirty-five years. After the trial court denied the defendant's motion for a new trial, this timely appeal followed.

***Analysis***

I. *Sufficiency of the Evidence*

The defendant contends the evidence is insufficient to support his convictions for especially aggravated robbery and aggravated assault because "there is no evidence that [the victim] was deprived of any property, and his injuries did not rise to the level of serious bodily injury that is statutorily required for either offense." The State submits that it presented ample evidence to support both convictions as the defendant "used a deadly weapon to attack [the victim], [] [the defendant] stole [the victim's] money and bus card, and [] [the victim] suffered serious bodily injury as a result of the attack." Upon our review of the record, we agree with the State.

- 4 -

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are

consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id*.

The defendant was convicted of especially aggravated robbery. Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. An aggravated robbery occurs when a robbery is "[a]ccomplished with a deadly weapon . . . or [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402. When "accomplished with a deadly weapon" and when "the victim suffers serious bodily injury," a robbery is elevated to especially aggravated robbery. Tenn. Code Ann. § 39-13-403.

The defendant was also convicted of aggravated assault. Tennessee Code Annotated sections 39-13-101(a)(1) and 39-13-102(a)(1)(A)(i) provide that a person commits aggravated assault by intentionally or knowingly committing an assault that results in serious bodily injury to another. A person commits assault by intentionally, knowingly, or recklessly causing bodily injury to another. Tenn. Code Ann. § 39-13-101(a)(1).

As it relates to both convictions, "[s]erious bodily injury" is defined as bodily injury that involves: (A) a substantial risk of death; (B) protracted unconsciousness; (C) extreme physical pain; (D) protracted or obvious disfigurement; (E) protracted loss or substantial impairment of function of bodily member, organ or metal faculty; or (F) a broken bone of a child who is twelve (12) years of age or less. Tenn. Code Ann. § 39-11-106(a)(36). "Protracted" in this context means "'delayed or prolonged in time.'" *State v. Ronald L. Carroll*, No. E2013-01781-CCA-R3-CD, 2014 WL 1759101, at \*5 (Tenn. Crim. App. Apr. 30, 2014) (quoting *State v. Derek Denton*, No. 02C01-9409-CR-00186, 1996 WL 432338, at \*5 (Tenn. Crim. App. Aug. 2, 1996)). In contrast, "bodily injury" involves "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily members, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(3). Concerning these definitions, this Court has stated:

> While the phrase "serious bodily injury" . . . is not susceptible to precise legal definition, it must describe an injury of a greater or more serious character than that involved in a simple assault. The distinction between "bodily injury" and "serious bodily injury" is generally a question of fact for the jury and not one of law.

*State v. Barnes*, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997).

This Court has explained that when determining whether a victim's injuries amount to serious bodily injury the "subjective nature of pain is a question of fact to be determined by the trier of fact." *State v. Ryan Love*, No. E2011-00518-CCA-R3-CD, 2011 WL 6916457, at \*4; *see State v. Eric A. Dedmon*, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at \*5 (Tenn. Crim. App. Feb. 23, 2006) ("The difference between 'physical pain' and 'extreme physical pain' is analogous to the difference between 'bodily injury' and 'serious bodily injury,' and as such, determining the severity of pain suffered is within the province of the jury."); *see also State v. Holly Lack Earls*, No. 01C01-9612-CC-00506, 1998 WL 15896, at \*7 (Tenn. Crim. App. Jan. 16, 1998) (finding serious bodily injury where the victim's injuries included a broken finger, a broken arm, requiring a metal plate, injuries to the victim's shoulder, legs, and ankles, loss of "a lot of blood," was in pain "for a long time," and was hospitalized "for a couple of days"); *State v. Darren Matthew Lee*, No. M1999-01625-CAA-R3-CD, 2000 WL 804674, at \*4 (Tenn. Crim. App. June 23, 2000) (holding serious bodily injury occurred where the victim was kicked "repeatedly" in the face, resulting in two black eyes, severe facial swelling and a torn lip, was unable to work for a week, suffered headaches for three to four weeks, and suffered "extreme physical pain"); *State v. Chester Dale Gibson*, NO. M2005-01422-CAA-R3-CD, 2006 WL 770460, at \*11 (Tenn. Crim. App. Mar. 24, 2006) (finding the victim suffered serious bodily injury after experiencing repeated blows to the face causing fractures to the nasal and eye area, two black eyes, a bruise to the right temple, a bruised lip and swollen and bloody nose, and was in "extreme physical pain"), *perm. to appeal denied* (Tenn. Aug. 28, 2006).

Here, the evidence is sufficient to sustain the defendant's convictions for especially aggravated robbery and aggravated assault. Viewing the evidence in a light most favorable to the State, the record indicates the defendant hit the victim in the back of the head three times with a hatchet. After hitting the victim with the hatchet, the defendant stole $13.00 and a bus pass from the victim's pocket. The victim testified he saw the defendant holding the hatchet. In both his written statement and at trial, Mr. Taylor provided the defendant was known to carry a hatchet. The victim identified the defendant in a photographic lineup as the man who attacked him with a hatchet and then took $13.00 and his bus pass. As a result of the attack, Officer Seward testified the victim was bleeding from a "large laceration" and required medical attention, and the victim testified he lost consciousness, suffered a skull fracture, received nearly thirty stitches, remains scarred and disfigured, and continues to experience pain and dizziness.

The defendant argues that the victim's injuries did not rise to the level of serious bodily injury and that the State failed to prove the defendant "knowingly obtained or exercised control over the victim's property" as neither the victim nor Mr. Taylor testified that they saw the defendant "take any items out of [the victim's] pockets." However, based upon the verdicts returned by the jury, it is clear the jury found the victim's skull fracture,

- 7 -

scars, disfigurement, and continued pain and dizziness sufficient to find the defendant inflicted serious bodily harm on the victim, a finding which was within their province as the trier of fact. *Barnes*, 954 S.W.2d 760, 765-66. The jury's verdict also makes clear the jury found the victim's testimony, detailing that he no longer had $13.00 or his bus pass immediately after the defendant attacked him with a hatchet, sufficient to find the defendant committed the especially aggravated robbery of the victim. As noted, the jury determines the credibility of witnesses and the weight afforded to the evidence, and this Court does not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *See Campbell*, 245 S.W.3d at 335; *Dorantes*, 331 S.W.3d at 379. Thus, the evidence is sufficient to support the defendant's convictions for especially aggravated robbery and aggravated assault. The defendant is not entitled to relief.

## II. *Jury Instructions*

The defendant contends the trial court failed to properly instruct the jury concerning the defense of self-defense. Specifically, the defendant argues the trial court committed reversible error in charging the jury on self-defense by relying on an outdated jury charge "which incorrectly permitted the jury to nullify the entire theory of self-defense if it believed that [the defendant] was engaged in unlawful activity." The defendant requests plain error review of this issue, acknowledging he failed to object to the instruction during trial and failed to raise the issue in his motion for new trial. The State concedes the trial court provided an erroneous instruction based upon *State v. Perrier*, 536 S.W.3d 388 (Tenn. 2017), but asserts the defendant is not entitled to plain error relief "because the defendant cannot establish that the issue was not waived for tactical reasons and because reversal is not necessary to do substantial justice." Upon our review, we conclude the defendant is not entitled to relief.

Relying on *State v. Perrier*, 536 S.W.3d 388 (Tenn. 2017), the defendant contends the trial court erred in instructing the jury concerning self-defense. In *Perrier*, our supreme court clarified that "the phrase 'not engaged in unlawful activity' is a condition on a person's statutory privilege not to retreat" rather than a complete bar to self-defense. *Id.* at 401. "[A] duty to retreat does not mean that a person cannot defend herself or himself." *Id.* at 404. Consistent with the common law duty to retreat, a defendant engaged in unlawful activity "'must have employed all means in his power, consistent with his own safety, to avoid danger and avert the necessity of'" using force. *Id.* at 404 (quoting *State v. McCray*, 512 S.W.2d 263, 265 (Tenn. 1974)). Furthermore, when the defendant's unlawful activity is what provokes the other individual's use of force, the defendant must "abandon[ ] the encounter or clearly communicate[ ] to the other the intent to do so." Tenn. Code Ann. § 39-11-611(e)(2)(A); *see also Perrier*, 536 S.W.3d at 399 (noting that the portion of the "no-duty-to-retreat rule" that required the defendant be "without fault in provoking the confrontation" is presently codified in Tenn. Code Ann. § 39-11-611(e)(2)).

We hold that a person is entitled to a jury instruction that he or she did not have to retreat from an alleged attack only when the person was not engaged in unlawful activity and was in a place the person had a right to be. *Perrier*, 536 S.W.3d at 401.

As applicable to the defendant's claim on appeal, the trial court charged the jury, in pertinent part, with self-defense as,

> Now, included in the [d]efendant's plea of not guilty is his plea of self-defense. If a defendant was not engaged in unlawful activity and was in a place where he or she had a right to be, or he or she would have a right -- Strike that. If a defendant was not engaged in unlawful activity and was in a place where he or she had a right to be, he or she would have a right to threaten or use force against the alleged victim when and to the degree that the defendant reasonably believed the force was immediately necessary to protect against the alleged victim's use or attempted use of unlawful force. The defendant would[] also have no duty to retreat before threatening or using force.

> If a defendant was not engaged in unlawful activity and was in a place where he or she had a right to be, he or she would also have a right to threaten or use force intended or likely to cause death or serious bodily injury. If the [d]efendant had a reasonable belief that there was an imminent danger of death or serious bodily injury, the danger created the belief of imminent death or serious bodily injury was real or honestly believed to be at the time and the belief of danger was founded upon reasonable grounds, the [d]efendant would also have no duty to retreat before threatening or using force likely to cause death or serious bodily injury.

Based upon our supreme court's holding in *Perrier* that a defendant's engagement in unlawful activity for the purpose of the self-defense statute is a threshold determination to be made by the trial court, the trial court's instruction in this case was erroneous. However, it is undisputed that the defendant failed to challenge the self-defense instruction at trial and raised the issue for the first time on appeal. Accordingly, we review this issue under plain error.

Under the plain error doctrine, a defendant may obtain relief only if all of the following criteria are satisfied: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the issue was not waived for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010).

The defendant argues he was prejudiced by the trial court's failure to make a threshold determination regarding whether he was engaged in unlawful activity and is entitled to relief under the plain error doctrine. The State contends the defendant is not entitled to plain error relief because the defendant "cannot establish that the issue was not waived for tactical reasons," and consideration of the error is not necessary to do substantial justice because "the defendant did not present *any* self-defense theory, so the instruction had no impact on the jury's verdict." Upon our review and as detailed above, it is clear the trial court failed to make the threshold determination regarding whether the defendant was engaged in unlawful activity for the purpose of the self-defense statute and as a result, provided an erroneous jury instruction. However, the record is absent any evidence that the defendant was engaged in unlawful activity at the time of the assault. Rather, the victim and Mr. Taylor testified that the defendant, the victim, and Mr. Taylor were simply gathered in the area of the In Town Apartments drinking alcohol. The only additional testimony regarding the defendant's activity prior to the crimes came from the victim who testified the defendant asked him for $5.00 prior the attack. As a result, no reasonable juror would have found the defendant was engaged in unlawful activity prior to the crimes. While the trial court erred in instructing the jury concerning self-defense, the defendant was clearly not engaged in unlawful activity, and thus, any error on the part of the trial court is harmless beyond a reasonable doubt. Accordingly, consideration of the error is not necessary to do substantial justice, and the defendant cannot satisfy the criteria under the plain error doctrine. *Martin*, 505 S.W.3d at 504; *Hester*, 324 S.W.3d at 56. The defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE

- 10 -