IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 19, 2023

## STATE OF TENNESSEE v. JEROME NCHIYAKO DOOLEY, ALIAS

**Appeal from the Criminal Court for Knox County**
**No. 116372   G. Scott Green, Judge**

_____

**No. E2023-00881-CCA-R3-CD**

_____

Defendant, Jerome Nchiyako Dooley, appeals the Knox County Criminal Court's partial revocation of his probation. He argues on appeal that: (1) the trial court revoked Defendant's probation on grounds not alleged in the warrant, in violation of due process; (2) the State failed to prove that Defendant violated the terms of his probation; and (3) the trial court violated Defendant's due process rights by failing to act as a neutral and detached magistrate. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and TOM GREENHOLTZ, JJ., joined.

Eric M. Lutton, District Public Defender; and Jonathan Harwell (on appeal) and David Skidmore (at hearing), Assistant Public Defenders, Knoxville, Tennessee, for the appellant, Jerome Nchiyako Dooley.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Charme P. Allen, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual and Procedural History*

*Guilty Plea*

The Defendant was indicted by the Knox County Grand Jury in 2019 with three counts of rape. Defendant pleaded guilty to one count of sexual battery on March 3, 2023. Defendant received an agreed sentence of five years as a Range III offender suspended to probation.

*Revocation Proceedings*

On April 18, 2023, a probation violation warrant was issued that alleged Defendant had been arrested for violating a no-contact order issued in Davidson County.[1] The Knox County Criminal Court held a probation revocation hearing on June 5 and 8, 2023.

Metropolitan Nashville Police Department Officer Juan Carnesales testified at the revocation hearing that he arrested Defendant on April 2, 2023, in connection with a domestic disturbance in Davidson County. When Officer Carnesales and another officer arrived at the scene, they made contact initially with Ms. Yanni Gardley, Defendant's ex-girlfriend. Ms. Gardley had called 911 because Defendant was threatening her while holding a knife. Officer Carnesales discovered after a records check that Defendant was on bond for an offense in Davidson County and that Defendant could not have contact with Ms. Gardley as a bond condition.

Defendant told Officer Carnesales that "not much went on." Defendant told Officer Carnesales that he and Ms. Gardley got into a "verbal altercation" and that he had a butcher knife "at one point," but denied that he threatened Ms. Gardley. Defendant told Officer Carnesales that his attorney[2] had told him the bond conditions were no longer in effect, and Defendant was under the impression that he was allowed to stay at Ms. Gardley's residence. Officer Carnesales described Defendant's statement regarding the effectiveness of his bond conditions as "inaccurate" at the revocation hearing. Officer Carnesales arrested Defendant for violating the no-contact provision of his bond. Officer Carnesales conceded at the revocation hearing that he did not arrest Defendant for aggravated assault at that time due to the conflicting stories and a lack of physical proof. Ms. Gardley, however, was arrested for domestic assault because the officers noted injuries on Defendant's neck.

Defendant testified on his behalf at the revocation hearing. Defendant stated that his probation supervision was transferred to Nashville after he pleaded guilty to sexual

---

[1] This no-contact order was not related to the sexual battery conviction for which Defendant was on probation here. Rather, the no-contact order stemmed from a November 2022 aggravated assault charge in Davidson County involving Ms. Gardley.

[2] This statement did not refer to any of the attorneys involved in the Knox County proceedings.

battery in Knox County. According to Defendant, his probation officer told him that Ms. Gardley's house was the only place he could legally stay because of his sex offender status.

Defendant testified that Ms. Gardley became upset on April 2 because he "had lied to her about one of [his] friends in [his] phone." Defendant had changed a female contact's name to a male name because Ms. Gardley "didn't like the friend too much." Defendant claimed that Ms. Gardley started "beating on [him]." Defendant testified that he contemplated suicide in that moment. Regarding his Davidson County bond conditions, Defendant testified that it was his belief that "the judge down [in Davidson County] had said the conditions were no longer in effect."

Defendant admitted on cross-examination that when he was arrested for aggravated assault in November 2022, he tried to run away after being placed in a police cruiser.[3] Defendant claimed he ran because if the police took him to jail then "Knox County [would] kill [him]." Defendant also admitted on cross-examination that he was in a closet when the police arrived on April 2—he contended that he was in the closet because he was packing his belongings. Defendant admitted that he had further contact with Ms. Gardley after April 2. Defendant admitted that he knew contacting Ms. Gardley was a violation of the bond conditions.

Defendant claimed he suffered from several mental health problems, which he claimed stemmed from "[going] years with a charge over [his] head that [he] didn't commit," referring to the rape allegations in this case. Defendant claimed that "[his] life was completely ripped from [him]" because of the rape allegations. Defendant conceded on cross-examination that he pleaded guilty to sexual battery, but characterized his plea as "a deal [with] the devil."

At this point in the hearing, the trial court asked Defendant, "Who made you raise your right hand, [Defendant], and say under oath, 'I did this,' who made you do that?" Defendant stated if he had not pleaded guilty the trial court would have "lock[ed him] away" and that the trial court would "never [have] let [Defendant] see the light of day again."

The trial court asked Defendant about his phone conversations:

---

[3] According to the record, Defendant's November 2022 arrest for aggravated assault in Davidson County was the basis for having his Knox County bond revoked. Defendant's Knox County bond was revoked shortly before he pleaded guilty to sexual battery in Knox County.

THE COURT: Have you spoken to [Ms. Gardley] since you have been back in the Knox County Jail after your arrest in – this most recent arrest in Nashville?

[DEFENDANT]: Yes, sir.

THE COURT: How many times?

[DEFENDANT]: A couple.

[THE PROSECUTOR]: Dozens.

THE COURT: You understand every one of those calls are recorded? How many times?

[DEFENDANT]: A nice amount of time[s].

After a brief redirect examination, the trial court stated, "He's not going to listen to any order that any [c]ourt gives him, that much is obvious. Whether it's me or a judge in Nashville. He's going to do what he wants to do in spite of what he's ordered not to do." Defendant said, "I don't think that's a fair statement to make." The trial court replied, "I don't really care if you think it's fair. That's what the reality of this case shows."

When Defendant stepped down from the witness stand, the trial court asked the prosecutor how long it would take to get the recordings of Defendant's phone calls from the Knox County Jail. The prosecutor told the trial court it would take "[a] day or two." The trial court continued the hearing to June 8, stating that it "want[ed] every one of those phone calls downloaded and made a part of this record."

*Revocation Hearing Continued*

When the hearing resumed on June 8, the trial court asked the prosecutor whether he had obtained records of Defendant's communications. The prosecutor stated that he had and determined that Defendant had contacted Ms. Gardley 269 times since he was booked into the Knox County Jail on April 17. A record of all calls, emails, and text messages sent between Defendant and Ms. Gardley since Defendant was booked into the Knox County Jail was made an exhibit to the hearing over defense objection.

After argument from counsel for both parties, the trial court ordered the prosecutor to contact the Davidson County General Sessions Court to obtain a copy of the no-contact order. The trial court noted that it recalled seeing a no-contact order for Defendant during

- 4 -

a bond revocation hearing that took place before Defendant's guilty plea in this matter. The prosecutor obtained the order and filed it as an exhibit to the hearing. Defendant did not dispute the order's validity.

Defense counsel began to argue that the evidence at the hearing had gone outside the scope of the allegations in the violation warrant but abandoned that argument and conceded that Defendant's contact with Ms. Gardley in violation of the no-contact order was a material violation of the terms of his probation. Defense counsel asked the trial court to "give [Defendant] another chance." The trial court stated, "[Defendant] doesn't feel like he has to listen to me or any judge in Nashville that has imposed any restriction on him. All he wants to do is talk about how we've all ruined his life."

After a lengthy statement from Defendant, the trial court found that Defendant had materially violated the terms of his probation by contacting Ms. Gardley in violation of his bond conditions. The trial court stated, "[Y]ou're certainly not the first person who has been seated where you're seated or who's walked through the doors of this courtroom that doesn't listen to what I have to say. My feelings are not hurt by it. I just accept that it's a part of what I do for a living." The trial court imposed a split-confinement sentence in which Defendant would serve one year in the Knox County Jail, after which he would be reinstated to probation.

Defendant appeals.

### *Analysis*

Defendant raises three issues for our review. He argues that: (1) the trial court relied on grounds not alleged in the warrant in revoking his probation; (2) the State failed to prove that Defendant violated the terms of his probation; and (3) he was denied due process in the form of a neutral and detached magistrate. We address each issue in turn.

#### *Reliance on Grounds Not Alleged in Warrant*

Defendant argues that the trial court violated his due process rights by relying on grounds not alleged in the probation violation warrant when the trial court revoked his probation. The State argues that the trial court relied, at least in part, on the ground alleged in the warrant. We agree with the State.

Defendants are entitled to "minimum due process rights" in probation revocation proceedings. *State v. Yoc*, No. M2018-00585-CCA-R3-CD, 2020 WL 672293, at *5 (Tenn. Crim. App. Feb. 11, 2020) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)), *no perm. app. filed*. This includes written notice of the alleged violations. *Id.* However, actual

- 5 -

notice suffices in the relaxed due process context of probation revocation proceedings. *Id.* Generally, revoking a defendant's probation "based on grounds not alleged and noticed to the defendant is a violation of due process." *State v. Conyers*, No. E2004-00360-CCA-R3-CD, 2005 WL 551940, at *4 (Tenn. Crim. App. Mar. 9, 2005), *no perm. app. filed*. That said, "a trial court's partial reliance on a ground for revocation not noticed to the defendant is harmless 'if the trial court also relied upon properly noticed grounds supported by the evidence.'" *State v. Munn*, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *4 (Tenn. Crim. App. Mar. 23, 2023) (quoting *State v. McGill*, No. M2015-01929-CCA-R3-CD, 2016 WL 3947694, at *4 (Tenn. Crim. App. July 18, 2016), *no perm. app. filed*), *no perm. app. filed*.

The probation violation warrant here alleged that Defendant had violated "Rule #1" of the terms of his probation, which required him to obey the law. More specifically, the warrant alleged that Defendant was arrested for violating the no-contact provision of his Davidson County bond conditions. Officer Carnesales testified at the revocation hearing about the events giving rise to Defendant's arrest for violating the no-contact provision of his bond conditions. When Defendant suggested at the hearing that the trial court had gone outside of the grounds alleged in the warrant, the trial court recalled that "[t]he warrant alleges that [Defendant] violated his probation by violating a no-contact order to wit the testimony that we heard from the officer from Nashville . . . the other day." Defendant conceded that he had violated his probation.

Defendant portrays the trial court's decision to revoke his probation as exclusively grounded in Defendant's contact with Ms. Gardley after he had been transported to the Knox County Jail. The record, however, does not bear this out. To be sure, the trial court was properly concerned with the volume of Defendant's contact with Ms. Gardley after he arrived at the Knox County Jail. However, the transcript of the revocation hearing shows that the trial court relied, at least in part, on the grounds alleged in the violation warrant in revoking Defendant's probation.

Even if the trial court relied on Defendant's post-arrest contact with Ms. Gardley in revoking his probation, Defendant received actual notice of this ground. Defendant was questioned on the first day of the hearing about his post-arrest contact with Ms. Gardley. Defendant admitted that he knew the no-contact provision of his bond conditions was in effect after April 2. As the State points out, there was no unfair surprise here because the trial court continued the hearing, thus giving the parties another opportunity to address it. *See Stamps v. State*, 614 S.W.2d 71, 73-74 (Tenn. Crim. App. 1980) ("[I]t would be illogical to require a trial court to terminate a hearing on probation in order for written notice to be given to a probationer whose evidence shows a violation of the terms of the probation, especially where, as here, the trial judge advises the probationer of the intent of the court to consider such matter at further hearings."). Though written notice is preferable,

Defendant was not prejudiced, misled, or surprised when his post-arrest contact with Ms. Gardley became an issue at the hearing. *See State v. Wolford*, No. 03C01-9708-CR-00319, 1999 WL 76447, at *7 (Tenn. Crim. App. Feb. 18, 1999), *perm. app. denied* (Tenn. Sept. 20, 1999).

The trial court relied, at least in part, on the grounds alleged in the violation warrant in revoking Defendant's probation. To the extent that the trial court relied on grounds not alleged in the warrant, Defendant had actual notice of such grounds. Defendant received due process with respect to this issue, and is not entitled to relief on this issue.

*Revocation Decision*

Defendant next argues that the State did not prove any violation of probation, and the trial court abused its discretion in revoking his probation and ordering him to serve a year in jail. The State counters that Defendant conceded to violating the terms of his probation, and the trial court did not abuse its discretion in ordering a split-confinement sentence. We agree with the State.

Trial courts must perform a two-step inquiry in probation revocation decisions, both of which are distinct discretionary decisions. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022) (citing T.C.A. §§ 40-35-308, -310, -311). The first step is to determine whether to revoke the defendant's probation. *Id.* The second involves the appropriate consequence. *Id.* We review these decisions for "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id.* at 759. "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2012)). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

Defendant presents two arguments that the no-contact provision of the bond conditions was not in effect. First, Defendant argues that the no-contact order was facially invalid because one of the boxes on the form was not checked. Next, he argues that the no-contact order ceased to be effective when he was arrested because he was no longer on bond. He presents these arguments, which were never advanced in the trial court, without citation to any authority. These deficiencies result in waiver of Defendant's arguments here. *See State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988) ("It is elementary that a party may not take one position regarding an issue in the trial court,

change his strategy or position in mid-stream, and advocate a different ground or reason in this Court."); Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by . . . citation to authorities . . . will be treated as waived in this [C]ourt.").

Defendant's admissions at the revocation hearing support the trial court's decision to revoke his probation. Defendant argues in his reply brief that he did not concede that he violated his probation. The hearing transcript, however, shows that this is simply untrue. Defendant admitted in his testimony that he knew it was a violation of the bond conditions for him to contact Ms. Gardley after his April 2 arrest. His counsel at the hearing, in an apparent shift in strategy, conceded that Defendant had violated the terms of his probation and began to argue that Defendant's probation should be reinstated. Defendant's admissions alone constitute substantial evidence to support revocation. *See State v. Pruitt*, No. E2015-01494-CCA-R3-CD, 2016 WL 3342356, at *4 (Tenn. Crim. App. June 8, 2016), *no perm. app. filed*. Additionally, the testimony from Officer Carnesales established that Defendant had in-person contact with Ms. Gardley in violation of the no-contact order. The trial court did not abuse its discretion in revoking Defendant's probation.

As to the second *Dagnan* prong, the trial court's decision to confine Defendant for one year was grounded in Defendant's blatant and continued disobedience of court orders:

> [THE COURT:] The point is, is that he does not feel like he has to listen to anyone, including the person who is addressing you right now. He doesn't feel like he has to listen to me or any judge in Nashville that has imposed any restriction on him. All he wants to do is talk about how we've all ruined his life.
>
> [. . .]
>
> [I]n order to make this system work, there has to be consequences, and you certainly understood at the time that you were taken into custody in Nashville that you could have no contact with Ms. Gardley. In spite of that, you contacted her 269 times after you were placed within the Knox County Jail on this revocation.
>
> The 5[-]year sentence heretofore probated is now revoked, ordered to execute, and [be] served. However, the same will be suspended after the service of one year within the Knox County Jail. Maybe that will get your attention.

The trial court's statements are sufficient to facilitate our review and to justify the trial court's decision as to the consequence of revocation. *See Dagnan*, 641 S.W.3d at 759. The

trial court was obviously concerned with Defendant's amenability to correction in light of his extensive post-arrest contact with Ms. Gardley, which Defendant knew at that point violated the bond conditions. Defendant is not entitled to relief on this issue.

*Neutral and Detached Magistrate*

Defendant finally argues that the trial court violated his due process rights by failing to act as a neutral and detached magistrate. Defendant asserts that the trial court "generated evidence" against him and "took on the role of the prosecutor[.]" The State argues that this claim is waived, and Defendant is not entitled to plain-error relief. We agree with the State.

One of the due process rights afforded to criminal defendants in the probation revocation context is a neutral and detached magistrate. *Gagnon*, 411 U.S. at 786; *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993). This does not, however, place a categorical bar on the trial court asking questions of witnesses. *See* Tenn. R. Evid. 614(b) ("The court may interrogate witnesses."); *State v. Odom*, No. M2022-00756-CCA-R3-CD, 2023 WL 4171011, at *7 (Tenn. Crim. App. June 26, 2023), *perm. app. denied* (Tenn. Sept. 12, 2023); *see also State v. Schiefelbein*, 230 S.W.3d 88, 117-18 (Tenn. Crim. App. Feb. 8, 2007) ("So long as the inquiry is impartial, trial courts may ask questions to either clarify a point or to supply any omission.") (citations omitted).

We note at the outset that Defendant did not object during the trial court's questioning and statements he now raises on appeal. *See* Tenn. R. Evid. 614(c) ("Objections to . . . interrogation by [the court] may be made at the time or at the next available opportunity when the jury is not present."). This issue is thus waived for plenary review. *See* Tenn. R. App. P. 36(a).

Plain-error relief is appropriate when:

(a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law has been breached; (c) a substantial right of the accused has been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016) (citations omitted); *see also* Tenn. R. App. P. 36(b). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Martin*, 505 S.W.3d at 504 (quoting *State v. Donald Smith*, 24 S.W.3d 274, 283 (Tenn. 2000)). "If any one of these factors is not satisfied, we need not

consider the remaining factors." *Martin*, 505 S.W.3d at 505 (quoting *State v. Michael Smith*, 492 S.W.3d 224, 232-33 (Tenn. 2016)).

Defendant has failed to establish here that the trial court breached a clear and unequivocal rule of law. *See Martin*, 505 S.W.3d at 504. The trial court knew that Defendant had post-arrest contact with Ms. Gardley. The trial court's questioning of Defendant and order to obtain the jail records, was to clarify evidence already introduced and remedy a perceived omission in the proof; as such, "it does not matter that the witness' answers 'bolstered the State's position.'" *Odom*, 2023 WL 4171011, at *7 (quoting *Agostinho v. State*, No. M2014-01928-CCA-R3-PC, 2015 WL 5451483, at *6 (Tenn. Crim. App. Sept. 16, 2015), *perm. app. denied* (Tenn. Jan. 19, 2016)). The trial court knew of the no-contact order, and Defendant did not dispute its validity at the hearing, so the trial court's directive to enter the order as an exhibit sought to clarify evidence already introduced. Contrary to Defendant's assertions, the trial court did not "generate[] evidence" against him or "[take] on the role of the prosecutor."

Additionally, as the State points out, the purpose of restraining trial courts' interrogation of witnesses is to avoid swaying the jury. *See State v. Napper*, No. M2019-00623-CCA-R3-CD, 2020 WL 4046033, at *6 (Tenn. Crim. App. July 20, 2020) (quoting *Schiefelbein*, 230 S.W.3d at 117), *perm. app. denied* (Tenn. Nov. 12, 2020). There was no jury here, so there was no danger of unfair prejudice resulting from the trial court's interrogations. *See Napper*, 2020 WL 4046033, at *6.

Because Defendant has not established that the trial court breached a clear and unequivocal rule of law, we need not consider any other factor in the plain error analysis. *See Martin*, 505 S.W.3d at 505 (quoting *Michael Smith*, 492 S.W.3d at 232-33). Though Defendant may be dissatisfied with the trial court's decision, he received due process. Defendant is not entitled to relief.

## CONCLUSION

For the reasons above, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE